(No. 29875.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellant, *vs.* FRANKENSTEIN & Co., Appellee.

*Opinion filed March 19, 1947.*

WILLIAM J. TUOHY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOHN F. GROSSMAN, OTHO S. FASIG, EMMETT HARRINGTON, and J. HERZL SEGAL, of counsel,) all of Chicago, for appellant.

HOLT & KEARNEY, and SCOTT, MACLEISH & FALK, both of Chicago, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal by the county collector from a judgment of the county court of Cook county sustaining objections to the county collector's application for judgment and order of sale for delinquent taxes of the year 1942. Appellee paid its taxes in full, under protest as provided by law, and filed objections seeking a refund of the portions of the tax alleged to have been illegally exacted.

Appellant's first contention is that the trial court erred in sustaining objections to the levy for tuberculosis sanitarium purposes. It was objected that the $3,000,000 levied for this purpose exceeded the amount of estimated resources available for appropriation by $90,000. Esti-

mate No. 16, on which this objection is based, shows the following:

"Estimate of resources available for appropriation:

| | | |
|---|---|---|
| Current assets at 1/1/42 | | $ 845,338.53 |
| Cash | $ 5,673.00 | |
| Net taxes receivable | 839,665.53 | |
| | | |
| Tax levy of year 1942 | | 3,000,000.00 |
| | | $3,845,338.53 |
| Application of estimated resources: | | |
| Liabilities at 1/1/42 for accounts payable | | $ 935,338.53 |
| Amount to be appropriated for loss and cost | | 300,000.00 |
| Amount available for other appropriations | | 2,610,000.00 |
| | | $3,845,338.53 |

Miscellaneous:

700-S-5 Accounts payable, not accounted for in appropriations for liabilities as of January 2, 1942 ...........................$ 90,000.00"

The objector contends that by deducting the total liabilities at January 1, 1942, of $935,338.53 from the total resources available for appropriation, a balance of $2,910,000, the maximum amount available to meet requirements for general purposes, is found; that the $3,000,000 appropriated and levied therefore exceeds the assets available to the extent of $90,000, making the levy to that extent illegal and void.

Appellant contends that appellee confuses appropriation and levy, pointing out that the city appropriated $2,910,000, the amount appellee insists should have been appropriated, but that the city levied $3,000,000, the additional $90,000 being to cover a deficit in funds to meet accounts payable. Subdivision C of the annual appropriation ordinance, which lists the appropriations for liabilities at January 1, 1942, shows liabilities of the tuberculosis fund to be $845,338,53 rather than the $935,338.53 listed in estimate No. 16 shown above. No item of any amount for deficit is appropriated.

The crux of the situation is then, that the appellant contends the tuberculosis fund had accounts payable of $935,338.53 at January 1, 1942, and cash of only $845,-338.53 to meet them, and that it was necessary to levy an additional $90,000 to pay such accounts. Appellee, relying on the appropriations for accounts payable January 1, 1942, listed in subdivision C, contends that the accounts payable are only $845,338.53, and that the additional $90,000 accounts payable claimed have not been appropriated for or levied as a deficit. There is nothing in the record to show why the $90,000 was not included in the amounts appropriated under schedule C as a deficit, as appellant claims it is. In the absence of such explanation we are of the opinion that the taxpayer was entitled to rely upon the $845,338.53 figure shown in subdivision C, as the correct amount of accounts payable on January 1, 1942. The trial court properly sustained the objection.

The next objection sustained by the trial court was filed to the following item on the ground that it was not itemized as required by law:

"Fire Department
Bureau of Equipment and Supplies
Miscellaneous
51-D-1 Motor Apparatus—Additions and replace-
ments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$80,000.00"

Appellee contends that this item is vague, uncertain and indefinite in that it is impossible to tell whether the appropriation is for the purchase of new motor apparatus to add to or replace existing motor apparatus, such as fire trucks, hook and ladder trucks, etc., or whether the appropriation is for the purchase of such equipment as sirens, spotlights, tires, etc. The controlling language here consists of the words: "Motor apparatus—Additions and replacements." The single purpose of the appropriation is clearly that of providing for motor apparatus. It does not say motor parts or motor accessories. It necessarily must mean the

various types of motor vehicles employed by the fire department to insure the operation of that department. What proportion of the money will be used to purchase new or additional motor apparatus, and what is spent for replacements of existing motor apparatus, is immaterial. Nor is the language susceptible of appellee's interpretation that it might be used for sirens, searchlights, etc. The item is sufficiently specific to give the taxpayer information as to the purpose for which the tax would be applied. (*People ex rel. Toman* v. *Mercil & Sons Plating Co.* 378 Ill. 142; *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285.) The trial court was in error in sustaining the objection made to this item.

Appellant next contends that the trial court erred in sustaining objections to an alleged overestimate of tax anticipation warrant liabilities, amounting to $2,651,180.14. The record shows that the sum of $6,690,000 was estimated to be the net amount of taxes receivable from the 1941 taxes. In arriving at this figure, the tax warrants unpaid as of January 1, 1942, were estimated at $24,700,000 with interest of $60,000. The report of the comptroller of the city of Chicago showed that the actual tax warrants unpaid on December 31, 1941, against the 1941 levy, totalled $22,100,000 and interest thereon of $8,819.86. Payment of tax on the difference between the estimated and actual figures, or $2,651,180.14, was objected to and sustained. The discrepancy between the estimate and actual figures is admitted by appellant.

This precise objection was upheld by this court in the case of *People ex rel. Schlaeger* v. *Bunge Brothers Coal Co.* 392 Ill. 153. In that case there was an overestimate of tax warrant liability totalling $1,200,067.47. The county collector then sought to justify the overestimate by pointing out that it was based on the financial report required of the city comptroller on or before December 1 of each year by section 17 of article 7 of the Cities and Villages

Act, (Ill. Rev. Stat. 1939, chap. 24, par. 117,) and that it was impossible to exactly estimate the amount of tax warrants which would be outstanding one month hence. This court pointed out, however, that the statute also required a revised financial report within the first fifteen days of each fiscal year; that the city council should have ascertained the correct amount of outstanding tax warrants from such revised report prior to passing its 1941 appropriation ordinance. It was there held that the appellant collector had the burden of proving compensating estimates which would offset the overestimate objected to, with the result that the taxpayer would not be harmed. No evidence of compensating estimates was given in the *Bunge case,* and the objection to the tax item was sustained.

In the case before us appellant has sought to meet the burden of proof imposed by the *Bunge case* by introducing evidence of compensating underestimates, based upon the testimony of Henry M. Doyle, chief clerk of the city comptroller's office, and William Hill, the expert accountant of that office. Without going into detail concerning their evidence, it appears therefrom that on December 1, 1941, tax warrants against the levy of 1941 had been issued in the amount of $20,500,000. To meet payrolls and expenses for the month of December it was estimated that an additional $4,200,000 in tax warrants would have to be sold, which would have made the total of tax warrants outstanding on January 1, 1942, to be $24,700,000, the amount shown in the annual appropriation bill.

During the month of December, 1941, taxes due from the levies of 1935 through 1940 were unexpectedly received in the amount of $2,077,501.45 in excess of what had been estimated. This made it unnecessary to sell the entire $4,200,000 in tax warrants and only $1,600,000 were sold, with the result that there was the sum of $2,600,000 less than stated in the appropriation ordinance as outstanding in tax warrants. Appellant contends that this explanation

of the cause of the overestimation of tax warrant liability also discloses a compensating error, in that the unexpected payment of taxes in December, 1941, causes the asset of uncollected 1935-1940 taxes to be overestimated in the amount of $2,077,501.45.

As a further compensation for the overestimate in tax warrant liability, appellant sought to prove that although the appropriation bill showed accounts payable of $7,558,-921.15, the actual accounts payable on January 1, 1942, as shown by the records of the comptroller's office, were $8,129,596.56 or $558,921.15 more than estimated on December 1, 1941. It is said that this underestimate of accounts payable was due to the fact that the accounts payable were reduced during the month of December only in proportion to the $2,077,501.45 back taxes received plus the sale of $1,600,000 in tax warrants, as against the proportion they would have been reduced had the entire $4,200,000 in tax warrants been sold as anticipated.

Appellants contend that the overestimating of tax warrant liabilities amounting to $2,651,180.14 was more than offset by the overestimate of net taxes receivable from levies of 1935 to 1940 amounting to $2,077,501.45 and by the underestimate of accounts payable amounting to $558,-921.15, with the result that the taxpayer was not harmed. For this reason they say the trial court was in error in sustaining appellee's objection to the item.

As we pointed out in the *Bunge case,* the Cities and Villages Act (in this case the revised act, Ill. Rev. Stat. 1941, chap. 24, par. 9-68, subpar. 2,) requires the comptroller to submit a revised report based on information available within the first fifteen days of each fiscal year, pertaining to matters specified in that paragraph of the statute, and may submit amendments to that report any time prior to the passage of the annual appropriation bill. Here, as in the *Bunge case,* it is apparent that the true account of tax warrant liability was known before Janu-

ary 5, 1942, when the city council passed its annual appropriation bill. It is obvious, too, that the figures which appellant contends were compensating items, *i.e.,* the unusual amount of back taxes collected in December, 1941, and the increase of accounts payable, were known by January 5, 1942. Indeed, it would appear that this information was had in sufficient time in December, 1941, to reduce the sale of tax warrants from the estimated $4,200,000 to the sum of $1,600,000. Whether these items were compensating becomes moot in view of the fact that the actual figures of both tax warrants and the alleged compensating items were known by the comptroller on January 1, 1942. It was the duty of the city council to determine these amounts before passing its ordinance. Appellant complains of the complex nature and difficulty in handling of a city's financial affairs, and insists that because the council adopted its appropriation ordinance on January 5, 1942, it was impossible to revise the figures of the December 1 estimates in so short a time. Such action of the city council could not be allowed to defeat the provisions, intents and purposes of the statute calling for the revised report in the first fifteen days of the fiscal year. If a difficult situation is presented, the remedy to be sought is legislative and not judicial. The trial court properly sustained this objection.

The final contention of appellant is that the trial court erred in sustaining objections to the levy of the city relief fund for reimbursement of advances made by other city funds for relief purposes. The facts are these: During the fiscal year of 1941, the city relief fund borrowed the sum of $2,144,811.87 from other idle city funds. On January 5, 1942, the city adopted its appropriation ordinance disclosing that $1,635,382.09 of the liabilities incurred by these advances were charged against appropriable resources of the city relief fund available at the beginning of the fiscal year of 1942, (*i.e.,* current assets and net taxes receivable,) and the balance of $509,429.78 was charged

532

against the city's 1942 relief fund tax levy. It is the payment of taxes on this balance to which appellee objects.

The appropriation for the city relief fund as set out in the 1942 appropriation and levy ordinances, is as follows:

"For relief of poor and indigent persons, as provided
by law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$4,890,570.22
Loss and cost in collection of taxes. . . . . . . . . . . . . . .    600,000.00
Liability for reimbursement of advances made by
    other City funds for relief purposes not ac-
    counted for in appropriations for liabilities as
    of January 1, 1942. . . . . . . . . . . . . . . . . . . . . . . . . . .    509,429.78

$6,000,000.00"

A similar objection was considered by this court in the case of *People* v. *Bunge Brothers Coal Co.* 392 Ill. 153. In that case the city of Chicago sought, in its 1941 appropriation and levy ordinances for the city relief fund, to reimburse loans made to that fund from other idle city funds during the year prior to the collection of 1940 taxes, in the amount of $578,577.27. This item represented the difference between $2,810,000 loaned and the amount estimated by the city to be available from cash on hand and net taxes receivable, which were listed as $364,335.25 and $1,867,087.48, respectively. This court held that a levy for repayment of the deficit is not invalid, where, through inability to collect, the previous levy did not yield sufficient funds to complete repayment. However, in that case it was also held that the deficit levy of 1941 was invalid, since the 1940 taxes had not at the time gone into collection, and a failure to collect the tax obviously could not be shown at that time. Evidence was introduced in that case showing that in the 1940 appropriation and levy for the city relief fund there was appropriated and levied $6,000,000, of which $600,000 was for loss and cost and $5,400,000 for relief, yet the 1941 levy and appropriation showed only an estimate of net taxes receivable, totalling

$1,867,087.48. It was there held that, in the absence of an explanation of such anticipated failure of collection, no reason existed why there should not be sufficient collection in the 1940 levy to meet the alleged deficit, and that the city was without power to make a levy to repay the balance of the sum borrowed.

This problem of the *Bunge case* is the one presented to us here. Only the figures are different. The deficit levy objected to here is $509,429.78. In addition, appellant has, in the present case, undertaken to explain the low estimate figure of net taxes receivable, even though the 1941 taxes had not yet gone into collection. It was shown by the comptroller's report that the gross of unpaid taxes totalled $12,017,417.35, from which was deducted reserve for loss and cost of $5,967,585.19 and outstanding tax anticipation warrants of $4,611,000, leaving the estimated net taxes receivable of only $1,438,832.16 for all years prior to 1942. From these figures appellant contends it is obvious that resources other than the current levy were insufficient by approximately $500,000 to meet all liabilities of the fund and that the deficit had to be met to that extent out of the 1942 levy.

Appellant states that the difference between gross taxes receivable and net taxes receivable is not due entirely to anticipated failure of collection of taxes, but that the difference is due in a large measure to outstanding tax warrants. It is an established principle that holders of tax warrants must look to the specific levy against which they were issued for collection. (*People ex rel. Toman* v. *M. Born & Co.* 373 Ill. 490; *Dimond* v. *Comr. of Highways,* 366 Ill. 503.) Appellant proved by the comptroller's report that there were $4,611,000 in outstanding tax anticipation warrants chargeable to the $12,017,417.35 gross of uncollected taxes for years prior to 1942. No evidence was introduced to show in what proportion the levies of years preceding 1942 were liable for payment of tax anticipation

warrants, nor was there any evidence showing the proportion which the past levies would bear to the $5,967,585.19 item of reserve for loss and cost. In the absence of such evidence, particularly with reference to the 1941 taxes which had not yet gone into collection, it cannot be determined that sufficient taxes would not be collected to pay the deficit of $509,429.78, and, as in the *Bunge case,* the city was without power to make the levy to repay the balance of the sum borrowed. The court did not err in sustaining this objection.

The judgment of the county court sustaining the objections to the levy for the fire department is reversed and the cause is remanded, with directions to enter judgment overruling objections to such tax. Its judgments sustaining the objections to other taxes herein considered are affirmed.

*Affirmed in part and reversed in part and remanded, with directions.*