(No. 30313.

THE PEOPLE *ex rel.* Louis E. Nelson, County Collector, Appellee, *vs.* RIDGE COUNTRY CLUB, Appellant.

*Opinion filed November 20, 1947—Rehearing denied Jan. 15, 1948.*

ADELBERT BROWN, of Chicago, for appellant.

WILLIAM J. TUOHY, State's Attorney, and BENJAMIN S. ADAMOWSKI, Corporation Counsel, (JOSEPH F. GROSSMAN, OTHO S. FASIG, EMMET HARRINGTON, and ROBERT J. NOLAN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant filed certain objections to the application of the collector of Cook County for judgments on certain taxes levied for the city of Chicago for the year 1942. The objections were overruled and hence this appeal.

At the outset it is necessary to dispose of a contention of appellee that there are pending no legal objections which properly raise the points urged in the briefs; and that of the appellant, claiming the court abused its judicial discretion in refusing to permit the tax objections filed by it to be amended, after additional evidence had been allowed to be introduced.

Among the objections was one that "the taxes were in each instance extended in excess of the legal amount." During the trial a stipulation was entered into between counsel that the cause be continued for further hearing, until after the decision in *People ex rel. Schlaeger* v. *Bunge*

*Bros. Coal. Co.* 392 Ill. 153, then pending in the Supreme Court, involving objections similar to part of those under consideration here. After this decision was announced, other and further evidence was heard in the instant case, and appellant made a motion to amend the objections on file, so as to show the specific grounds, part of which were involved in the *Bunge case.* Upon the objection of appellee the motion to amend was denied, but no reason was assigned. Appellee made no motion to strike the original objection, nor to make it more specific. It is apparent the appellee was fully aware the decision in the *Bunge case* would affect the taxes involved in this case.

The Revenue Act provides that the taxpayer may file objection, and the court shall then hear and determine the matter according to the right of the case; and it further provides: "In all judicial proceedings of any kind, for the collection of taxes and special assessments, all amendments may be made which, by law, could be made in any personal action pending in such court." (Ill. Rev. Stat. 1945, chap. 120, par. 716.) The applicable provisions of the Civil Practice Act regarding personal actions are: (1) that to make a defense more definite and certain, or to add new defenses, amendments may be allowed at any time before final judgment; and (2) the pleadings may be amended to conform to the proof at any time before or after judgment. Ill. Rev. Stat. 1945, chap. 110, par. 170.

The statute on Amendments and Jeofails also treats with this subject. (Ill. Rev. Stat. 1945, chap. 7, par. 1.) Section 1 provides: "the court in which an action is pending shall have power to permit amendments in any process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein." And section 7 of the act provides: "The omissions, imperfections, defects and variances in the preceding section enumerated, and all others of a like nature, not being

against the right and justice of the matter of the suit, and not altering the issue between the parties or the trial, shall be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by appeal or writ of error."

The evidence claimed to support the amended objection was received by the court. We have held that where the evidence is before the court the question involved may be decided although the objections do not precisely cover it. (*People ex rel. Thompson* v. *Dixon Masonic Building Ass'n,* 348 Ill. 593.) Undoubtedly if the *Bunge case* had been favorable to the contention of appellee it would have been presented to the trial court, and then applied to the points in controversy. The stipulation indicates that the 1942 taxes involved some of the same questions as those in the 1941 taxes, and the parties were awaiting the decision of this court. We think, in view of the particular circumstances, the amendment should have been allowed, unless the court believed the question could properly be decided upon the original objections considered in the light of the additional evidence. The original objection filed included all of the grounds set out in the amendment, although not specific, and the trial court, in view of the stipulation and the evidence, could readily conclude that such amendments were unnecessary, as no motion to strike or make more definite was urged by the appellee. (*People ex rel. Olson* v. *Atchinson, Topeka and Santa Fe Railway Co.* 389 Ill. 204.) We will, therefore, consider the merits of the case.

The first two objections involved appropriations for liabilities existing on January 1, 1942, for (1) judgments and interest on judgments $6,881,178.96, whereas the report of the comptroller of the city discloses that the amount of judgments and accrued interest at the end of the fiscal year 1941 was $309,434 less than the amount of the appropriation; (2) the underestimate in various funds of un-

restricted cash available in the "Corporate Purposes Fund," the "Library Fund," and the "Tuberculosis Sanitarium Fund." The unrestricted cash in these funds was understated as follows:

| | | | |
|---|---|---|---|
| Corporate fund budget estimate . . . . . . . . . . . . . . | $140,000.00 | | |
| Comptrollers' report . . . . . . . . | | $320,299.69 | |
| Understated . . . . . . . . . . . . . . | | | $180,299.69 |
| Library fund estimate. . . . . . . . | $ 72,000.00 | | |
| Comptroller's report . . . . . . . . | | $416,388.52 | |
| Understated . . . . . . . . . . . . . . | | | $344,388.52 |
| Tuberculosis sanitarium fund estimate . . . . . . . . . . . . . . . | $ 5,673.00 | | |
| Comptroller's report . . . . . . . . | | $ 63,548.49 | |
| Understated . . . . . . . . . . . . . | | | $ 57,875.49 |

Computation shows cash in these three items was
understated in the sum of. . . . . . . . . . . . . . . . . . . . . . $582,563.70

It is unnecessary to elaborate the reasons why the appropriation was excessive for principal and interest of judgments, and the understatement of cash.

Under the Revised Cities and Villages Act of 1941, (Ill. Rev. Stat. 1945, chap. 24, par. 9-68,) the city comptroller is required, on or about December 1 of each year, to submit a separate balance sheet for each fund of the corporation, showing by classes the estimated current assets and liabilities thereof, as of the beginning of the next fiscal year, and the amount of such assets available for appropriation in such year. Said section also requires the comptroller, within the first 15 days of each fiscal year, to submit to the city council a revised report on all matters in that paragraph specified, upon the basis of such information as shall then be available, and he may submit amendments of such report at any time prior to the passage of the annual appropriation bill.

In *People ex rel. Schlaeger* v. *Bunge Bros. Coal Co.* 392 Ill. 153; *People ex rel. Schlaeger* v. *Frankenstein & Co.* 396 Ill. 524; and *People ex rel. Schlaeger* v. *Dennis*

& Co. 397 Ill. 381, we construed this section of the statute, and one of like import affecting the board of education of the City of Chicago, and in substance held that, where the records would show the exact amounts that exist in certain funds at the end of the fiscal year, such amounts cannot be overstated or understated under the guise of an estimate, when the record would disclose the exact amount of liabilities or assets.

It is perfectly clear that the amount of judgments in courts of record could be ascertained from the record, and the amount of interest thereon is a mere matter of computation. Appellee attempts to justify the estimates in the budget for judgments by claiming appeals might be taken by the city on certain of the judgments, or new trials might be pending. Admitting this to be true, the appeal of a case does not set aside the judgment, and until a new trial is denied there is no judgment. If there is a judgment entered the record will disclose it, and it must be accurately carried into the budget, and if not entered by the court until after the beginning of the fiscal year it will be included in the budget of the following year.

Likewise, the amount of unrestricted cash on hand should be a mere matter of computation, either from the principal fund, or from the separate funds in which it may be carried. The taxing authorities are fully aware of the requirements of the statute, and can readily procure the information, and are not authorized to make a levy based on estimates until such amounts have been ascertained. Appellee also claims that compensating items which might have rendered the estimate accurate were not taken into consideration, but in view of what we held in *People ex rel. Schlaeger* v. *Frankenstein & Co.* 396 Ill. 524, this was not material, as we specifically held that where the actual figures could have been ascertained by the comptroller on January 1, it was the duty of the city council to procure the correct amounts before passing its ordinance. The reasons

underlying this requirement are set out at length in the decisions referred to above, and do not require further discussion. These objections should have been sustained by the county court.

The next objection involves an overestimate of liabilities of the "Corporate Purpose Fund," which did not represent a legal obligation, consequently increasing the amount of the. levy. The contention is that there is no liability to pay a debt that is not a legal obligation, and which, if levied for directly instead of indirectly, would be illegal. The amount involved in this objection is $2,476,068.07, which was appropriated under the "Corporate Purposes Fund" as "Liability to Working Cash Fund," indicating that amount had been borrowed, and should be repaid by levying the tax for the appropriate amount. The objection was sustained for the sum of $894,898.48, being the same fund mentioned in cases hereafter discussed, but being then designated "reimbursement to undistributed taxes." The whole appropriation involves a fund raised in exactly the same manner. Therefore, the net amount involved in this objection is $1,581,169.59.

The "Working Cash Fund" originated in 1930, when the General Assembly enacted a statute authorizing the creation of a fund of $12,000,000 in cities of the size of Chicago, to be used for certain defined purposes. This fund could be created by a bond issue or by a tax, but both means could not be used, and the fund was limited to $12,000,000. (*People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285.) In the years 1930, 1931 and 1932, the city of Chicago levied direct annual taxes for this fund aggregating $8,050,000, of which $5,444,679.15 have been collected. The city had issued and sold bonds to the extent of $12,000,000 immediately after the enactment of the act, so there has been paid into this fund over $17,000,000, with possibly some deduction for collection costs. These yearly direct taxes were held illegal in the

*Mills case,* and objections to the levy of a direct tax therefor sustained.

In the meantime, many taxpayers had paid such taxes without objection, and certain of the money was collected and had been placed in the fund called "Undistributed Taxes," which had been loaned to the "Corporate Purposes Fund." The tax levies of 1940, fixing estimates of liabilities and assets, included an item of $894,898.48 as the liability of the corporate fund, and appropriated a levy therefor. That case was before this court in *People ex rel. Schlaeger* v. *Brand,* 389 Ill. 298. The contention was made by the collector that it was levied for the purpose of paying money borrowed by one fund to pay a loan from another, which was a justifiable purpose, supported by authority, but not applicable because the fund borrowed was derived from an illegal levy, for the reason that if money in the "Undistributed Tax Fund" is earmarked for a particular fund then it is an asset of that fund. If the fund in question was derived from an illegal levy and cannot be used for the purpose for which it was levied, then it belongs either to the person who paid it, or, if his rights are extinguished, it goes to the corporate fund. *People ex rel. Toman* v. *Baltimore & Ohio & Chicago Railroad Co.* 381 Ill. 585.

After these cases the city made another appropriation in 1941, in the "Corporate Fund Account," for "Liability to the Working Cash Fund," because of borrowing from it in the manner as is indicated here. In the *Brand case* we affirmed the order of the county court in sustaining objections to the sum of $894,898.48, and the same objection in the same manner was affirmed without discussion in *People ex rel. Schlaeger* v. *Bunge Bros. Coal Co.* 392 Ill. 153, citing the two cases just above referred to.

These cases are conclusive. All of the borrowed funds are from the "Working Cash Fund," although sometimes designated as "Liability to Undistributed Taxes," or "Lia-

bility to Working Cash Fund." In either event the attempt was made to levy for the corporate fund to repay a loan from a tax which had been illegally exacted and held in a special fund. In the *Brand case* we held that taxes derived from an illegal levy cannot be used for the purposes levied. In such event it belongs to either the person who paid it, or to the corporate purpose fund. The last illegal levy for cash for a working cash fund was fifteen years ago, and aside from the principle that a tax once voluntarily paid cannot be recovered, time has elapsed sufficient to bar individual recovery. Since the levy for the corporate fund was for discharging a liability which did not exist, it was unauthorized, and the objection should have been sustained.

The appellee contends the liability may have been properly incurred by borrowing the money from the legal "working cash fund," but since the illegal tax and the bond fund have been commingled this cannot be urged because the debt does not exist in one case, and to allow it to be segregated against the part of the fund lawfully raised would be to invite illegal levies, and thus indirectly increase the working cash fund by indirect taxation, when it could not be legally done otherwise.

The last objection assigned is that the court erred in refusing to hold the resources of the relief fund of Chicago was underestimated, resulting in the levying of a tax to raise $560,849 more than was necessary. For the year 1942 there was appropriated for the city relief fund $6,000,000 in addition to liabilities of $1,635,382.09, or a total of $7,635,382.09. Among "Estimated resources" was an item of taxes receivable from previous years $1,497,812.23. It is contended that the amount of net taxes receivable is underestimated in the sum of $560,849. The method pursued to reach this result is to take the total amount of uncollected taxes for the corporate fund, and, after deducting the amount of principal and interest on tax anticipation warrants from the remainder thus

obtained, arrive at the percentage of taxes deemed collectible that year to the total unpledged amount of unpaid taxes.

The sum the city estimated available for use for the year 1942, after deducting unpaid warrants, was 28.08 per cent of the total of uncollected taxes for the corporate fund. The same method is pursued to ascertain the amount of taxes collectible from former years in the relief fund, and if the percentage of 28.08 per cent was applied to the total uncollected relief funds the amount available for use during 1942 would be $2,058,661.97 instead of that shown above. The amount of understatement of assets is thus arrived at by assuming that the percentage of collectible money from uncollected taxes and for previous years is the same for both funds. There is no proof of this other than there appears a similarity in the amount of resources from cash, together with the amount of taxes estimated as collectible in 1942 with the amount of liabilities of January 1, 1942. This is claimed to be an arbitrary balancing of items. The burden of proof is upon the objector to establish and prove his case, and in this instance it is necessary for him to prove that the estimate of taxes collectible is arbitrary, and not based upon a *bona fide* estimate. (*People ex rel. Toman* v. *Sage,* 375 Ill. 411; *People ex rel. Schlaeger* v. *Jourdan Packing Co.* 389 Ill. 163.) This has not been done.

An examination of the budget shows that the amount of taxes pledged to outstanding warrants issued from each fund is not in the same percentage, and that the amount of interest paid or accrued on warrants from each fund does not bear the same percentage. Thus, the record shows that of the corporate fund 33 per cent had been pledged for anticipation warrants, and for the relief fund 39 per cent had been pledged for payment of warrants. It also appears that the unpaid and accrued interest against the corporate fund was only $60,000, or approximately .4 per

cent, while the accrued interest on the city relief fund was 1.6 per cent. Thus neither the estimate of accrual of interest, nor the percentage of total taxes pledged are the same in both instances.

Other divergences could be pointed out demonstrating that comparison of ratios in such matters would not necessarily furnish proof to establish sufficient lack of good faith in estimates of taxes of former years available for present use. In matters which cannot be fixed with certainty the statute provides that the corporate authorities may make an estimate of amounts of taxes net, available for corporate use. The appellant has failed to prove by the degree of evidence required that there was any arbitrary fixing of the amount of taxes from prior years available as a resource, and has failed to establish that the estimate was not made in good faith and based upon reasonable grounds. The objection was properly overruled.

The appellee has furnished a supplemental record in this case, showing some deviation from the record presented by the appellant. It is not properly a part of this record because it was obtained and certified by the trial judge after the notice of appeal had been given. The rule is well settled in such instances that the application for the filing of an additional record must be made to this court, because the notice of appeal has transferred and removed the case from the jurisdiction of the trial court. Civil Practice Act, sec. 92; *Watkins* v. *Dunbar,* 318 Ill. 174; *People ex rel. Carr* v. *Omega Chapter of Psi Upsilon Fraternity,* 320 Ill. 326.

In each instance the brief of appellee has urged that the objection made by appellant should not be considered in this court, or, in the alternative, that the case should be remanded for the purpose of allowing appellee to offer additional evidence. We know of no practice which permits a party to a lawsuit to prevail in his objections in the trial court, and, if they should be held improper, urge

in this court the right of retrial of his lawsuit upon new evidence. We are quite certain that the skilled attorneys who represent appellee, had they had evidence, would have resorted to it rather than to the method pursued.

We might add further that we have held illegal taxation is unjust taxation; that the man who is illegally taxed has placed upon him an unfair burden. He must either pay the wrongful charge, or bear the expense of litigating it in a suit by the public. In the conduct of that suit technical opposition by the applicant to the objections should not receive consideration. (*People ex rel. Lee* v. *Kankakee and Southwestern Railroad Co.* 237 Ill. 362.) We held substantially the same in *People ex rel. Toman* v. *110 South Dearborn Street Building Corp.* 372 Ill. 459.

The county court of Cook County erred in overruling the objections to the levies for judgments and interest, and the levy arising from underestimates of unrestricted cash. It also erred in sustaining a part, only, of the third objection of appropriating for liability of the "Corporate Purposes Fund" for borrowing from the "Working Cash Fund," when it should have sustained the objection in full. The court was correct in overruling the last objection relating to the underestimate of assets of the "City Relief Fund."

The order of the county court of Cook County is reversed in part, as indicated above, and affirmed in part.

*Reversed in part, and affirmed in part.*