(No. 32433.—

THE PEOPLE ex rel. John B. Brenza, County Collector, Appellant, vs. S. L. FLEETWOOD, Appellee.

*Opinion filed November 20, 1952—Rehearing denied Jan. 20, 1953.*

John S. Boyle, State's Attorney, and John J. Mortimer, Corporation Counsel, both of Chicago, (Robert J. Nolan, of counsel,) for appellant.

MacLeish, Spray, Price & Underwood, Holt & Kearney, Adelbert Brown, Barr, Barr & Corcoran, Adams, Williamson & Turney, and Joseph H. O'Connor, all of Chicago, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The county court of Cook County sustained the objections of S. L. Fleetwood to the application of the county collector for judgment and order of sale on account of 1948 taxes levied by the city of Chicago, and entered judgment in favor of the taxpayer for the amount by which his taxes, which had been paid under protest, were found to be excessive. The collector appeals. Numerous objections are involved.

### The "Interfund Credits" Objection

Objection No. 1 presents the issue we have this day decided in *People ex rel. Brenza* v. *Edwards, ante,* p. 513. Certain items of the tax levies of the city for the years 1939, 1940, 1941, and 1942 were ultimately adjudicated to be invalid long after the appropriations for the year in question had been spent. The city had distributed the taxes which it received among its various funds in the proportions which the levy for each fund bore to the levy for all funds. As in the *Edwards case,* the objector here contends that this method of distribution resulted in overpayments to some funds, and underpayments to others, which gave rise to interfund obligations, and that the failure of the city to recognize these interfund obligations resulted in excessive levies on behalf of the funds to which underdistributions had been made. It is unnecessary to state here the history of each of the tax levies involved, or the detailed contentions of the parties, because the basic theory which underlies this objection is disposed of by our opinion in the *Edwards case.* We there held that the method of distribution of tax collections which was used by the city in this case is the method contemplated by statute and that the asserted interfund obligations do not exist. It follows that the county court erred in sustaining this objection.

## The "Balance Sheet" Objections

The county court sustained a series of objections based on differences between the estimated amounts of various assets as stated in the annual appropriation ordinance passed December 13, 1947, and the actual amounts of those assets as of the close of the year 1947 as shown by the city comptroller's annual report for that year. The collector takes the position that the comptroller's annual report was not admissible to disprove the validity of the estimates contained in the 1948 annual appropriation ordinance.

Under section 22-1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, chap. 24, par. 22-1,) a municipality with a population of more than 500,000 is required to pass an annual appropriation ordinance within the last sixty days of each fiscal year. The appropriation ordinance must contain estimates of all current assets and liabilities of each municipal fund as of the beginning of the fiscal year for which the appropriations are made, as well as detailed estimates of taxes to be levied. To assist the corporate authorities in making the required estimates, the legislature has directed the city comptroller to submit, on or before the first of November, balance sheets showing assets and liabilities as it is estimated they will exist at the beginning of the next fiscal year. (Ill. Rev. Stat. 1947, chap. 24, par. 9-68.) The comptroller may submit revised estimates at any time prior to the passage of the annual appropriation ordinance.

In accordance with the statute, the comptroller submitted estimates to the city council on November 1, 1947, and revised estimates on December 13, 1947. These estimates were adopted by the city council and incorporated in the 1948 appropriation ordinance passed December 13, 1947.

Section 7-21 of the Municipal Code of Chicago requires the comptroller to prepare, on or before April 1 of each year, an annual report, certified by a public accountant, showing the financial condition of the city for the preced-

ing year. This report, for the year 1947, shows variances between the city's estimated financial condition as shown in the appropriation ordinance, and its actual condition at the close of the year.

The collector contends that the statutory scheme precludes the use of exact figures in drawing up the annual appropriation ordinance; that the statute requires that estimates be made and used in the preparation of the appropriation ordinance; that the ordinance must be passed in advance of the close of the fiscal year, at a time when exact figures do not exist, and that the annual report cannot be used to disprove the estimated amounts. On the other hand, the objector, pointing out that the tax levy ordinance was not adopted until January 23, 1948, at which time the actual fiscal status as at the close of 1947 was known or ascertainable, argues that the 1947 report was admissible to prove the exact value of assets, and that objections to taxes must be sustained to the extent that actual assets exceeded estimated assets.

The objector's position is not sound. It is impractical, and it completely negatives the statutory provisions governing annual appropriation ordinances. The objector admits, as he must, that the appropriation ordinance must be passed before the end of the year and therefore must necessarily be based on estimates. He argues, however, that inasmuch as the tax levy ordinance was passed after the beginning of the new fiscal year, the estimates incorporated in the appropriation ordinance should have been disregarded when the levy ordinance was adopted and the figures which come to the knowledge of the corporate authorities only after an audit of the funds should have been substituted for the estimates. This argument, however, completely disregards the statutory requirement that the tax levy ordinance must be based upon the specific appropriations set forth in the appropriation ordinance. (Ill. Rev. Stat. 1947, chap. 24, par. 16-1.) It disregards also the fact that the conditions

under which an appropriation ordinance may be amended are severely restricted. Amendment is permitted only at the next regular council meeting occurring not less than five days after final passage of the appropriation ordinance, except that during an additional fifteen-day period an item of appropriation may be repealed or reduced in amount.

*People ex rel. Schlaeger* v. *Bunge Brothers Coal Co.* 392 Ill. 153; *People ex rel. Schlaeger* v. *Frankenstein & Co.* 396 Ill. 524; *People ex rel. Nelson* v. *Ridge Country Club,* 399 Ill. 46; and *People ex rel. Nelson* v. *Beu,* 403 Ill. 232, cases which contain references to the duty of the city council to procure accurate figures for use in the annual appropriation ordinance, do not apply here. Those cases involved appropriation ordinances prepared prior to 1947 under a statute which required that the appropriation ordinance be passed within the first sixty days of each fiscal year. (Ill. Rev. Stat. 1945, chap. 24, par. 22-1.) Prior to 1947 the comptroller was required to submit revised estimates within the first fifteen days of each fiscal year. Under that statute the appropriation ordinance was not required to be adopted until late in February, by which time exact figures could be ascertained. Under the present statutory scheme, it is impossible to ascertain the exact figures, and so the use of estimates is specified.

The parties have argued this objection in terms of the admissibility of the comptroller's annual report. In our view the issue is not to be so determined. The false or fraudulent character of an estimate could never be shown unless proof of the actual result was available to serve as a measure of the accuracy of the predicted result. For that purpose, the annual report, like any other relevant evidence, is admissible. But such an objection is not established merely by a showing of a difference between the prediction and the result. Municipal government does not come to a stop during the days which elapse from the passage of the annual appropriation ordinance to the close

of the year. Assets are collected and liabilities are paid. By necessity the estimates required by statute demand some speculation, and it is only reasonable to expect some error. The objector's contention, predicated upon an assumed requirement of precise accuracy, is not tenable.

Objections Nos. 2, 8, 14, 23, and 24, all based on the proposition that the estimates made by the corporate authorities in preparing the 1948 appropriation and levy ordinances must be exact, were improperly sustained. Since the same reasoning applies to an overestimate of a fund liability, objection No. 12 pointing to an overstatement of accounts payable by the relief fund also was improperly sustained.

Objection No. 21 charged that the city council failed to consider as an appropriable asset in the 1948 budget, the sum of $942,692.77 which consisted of cash representing collections of taxes for the years 1942 through 1944, which had been received from the county collector but had not yet been distributed to the various city funds on account of which the taxes were levied. This cash was in the city treasury well in advance of the time the appropriation ordinance was adopted; it was the duty of the city treasurer to distribute it to the proper funds, and it should have been shown as available in those funds. (*People ex rel. Toman* v. *Baltimore & Ohio & Chicago Railroad Co.* 381 Ill. 585.) The collector argues that this cash asset was included in the item of net taxes receivable, which was estimated for the various city funds, and that what is here involved is therefore the misnomer rather than the omission of an asset, pointing out that when a distribution of this cash is made to the various funds, the item of net taxes receivable for each fund will be reduced by an amount equal to the cash distribution, and the total assets will not be changed. Cash in the treasury when the estimates are made, however, is a matter of fact rather than opinion, and it must be accurately reflected. (*People ex rel. Nelson* v. *Beu,* 403 Ill. 232, 243; *People ex rel. Nelson* v. *Ridge*

*Country Club,* 399 Ill. 46, 51.) Objection No. 21 was properly sustained.

Objection No. 22, like Objection No. 21, is predicated upon the alleged failure of the city council to take into account an appropriable cash asset in the computation of its 1948 tax levy requirements. The asset in question is the sum of $109,139.60, which the comptroller's report of operations for the year 1947 shows to have been received prior to January 1, 1948, by reason of the prepayment of various city license fees for the year 1948. The objector contends that the failure of the city to take this cash into account makes the corporate fund levy invalid to the extent of $109,139.60.

There is a surface similarity between this objection and Objection No. 21. But the differences are significant. In sustaining Objection No. 21 we noted that cash in the treasury when the estimates are made is a matter of fact and must be accurately reflected. The cash there involved was shown to be in the city treasury well in advance of the time the 1948 estimates were made. Here there is no showing that any cash on account of 1948 license fees had been received before the estimates were made. Objection No. 22 should have been overruled.

### "NET TAXES RECEIVABLE" OBJECTIONS

The objector contends that in the 1948 appropriation ordinance the estimate of net taxes receivable from the levies for the years 1942 to 1945 was understated to the extent of $1,281,518.97, that the estimate of net taxes receivable from the levy for the year 1946 was understated by $473,628.18, and that the liability of the levy for 1947 for repayment of tax warrants was overstated to the extent of $528,686.46. Objections based upon these contentions were sustained.

Shortly stated, and omitting detail which would confuse rather than clarify, the pertinent facts with respect to all

of these contentions are these: The annual appropriation ordinance for each year contains an estimate of losses in tax collections and of the costs of collecting taxes. Each appropriation ordinance contains such an estimate not only for the particular year for which it makes appropriations, but also for the outstanding and uncollected balances of the tax levies of preceding years. The figure originally estimated as the amount of loss and the cost of collection of taxes levied for a particular year is not required to remain constant; it is subject to revision as experience with the actual collection of taxes indicates. (*People ex rel Schlaeger* v. *Brand,* 389 Ill. 298; see *People ex rel. Schlaeger* v. *Bunge Bros. Coal Co.* 392 Ill. 153; *People ex rel. Schlaeger* v. *Frankenstein,* 396 Ill. 524.) In these cases, which sustain the authority of the city council to revise its estimates of loss and cost, the fact of revision was shown by special summaries contained in the appropriation ordinances. But where the later appropriation ordinance failed to show that the city council had revised its original loss and cost estimates for prior years, it was held that the estimates fixed in the original appropriation ordinances for the respective years involved must stand. *People ex rel. Nelson* v. *Kenneth Court Building Corp,* 406 Ill. 357.

In the case before us, the 1948 appropriation ordinance used loss and cost estimates which were different from the estimates originally made, but that ordinance failed to show the particulars of the revised estimates. The taxpayer urges that the disposition of this objection is therefore ruled by our decision in the *Kenneth Court Building Corporation case.* The collector takes the position that the city council did in fact revise its estimates of loss and cost for the prior years' taxes receivable, although the particulars of the revised estimates were not incorporated in the 1948 appropriation and levy ordinances. He contends that these particulars were supplied by an ordinance adopted

November 30, 1951, and that the failure of the trial court to consider this amendatory ordinance was error.

Subsequent to our decision in *People* v. *Kenneth Court Building Corp.* 406 Ill. 357, the legislature authorized the correction of appropriation ordinances by itemizing the deductions which had been made from the amount of taxes collectible so as to show the manner in which the estimate of net taxes receivable had been computed. That statute provides: "Whenever the corporate authorities of any municipality with a population of more than 500,000 in any annual appropriation ordinance * * * stated the estimated amount of net taxes receivable as of the first day of that year without itemizing the amount of taxes * * * and the deductions prescribed by law, and said corporate authorities ascertained the total amount of appropriations required to be provided for in the tax levy for that year by giving effect to such estimate of net taxes receivable and levied taxes for the amount so ascertained, no part of such tax levy shall be vitiated for failure to specify in detail the amount of each item required to be stated in such appropriation ordinance in arriving at the estimate of said net taxes receivable; provided that the corporate authorities of such municipality before final judgment on objections to the application of the County Collector for judgment and order of sale against real estate returned delinquent for the nonpayment of general taxes for said year shall, by ordinance, correct the statement of the estimated amount of said net taxes receivable by amendment to such appropriation ordinance specifying the amount of taxes * * * which remains uncollected as of the first day of the fiscal year to which said appropriation ordinance applied * * *, the amount estimated to cover the loss and cost of collecting said taxes and the amount of principal of all unpaid tax anticipation warrants and all interest accrued thereon and an amount estimated to be sufficient to cover all interest to accrue thereon until re-

demption of said tax anticipation warrants to show the amount of net taxes receivable as estimated in the annual appropriation ordinance when originally passed. All such tax levies, not in excess of the maximum then authorized to be levied, are legalized and validated." Ill. Rev. Stat. 1951, chap. 24, par. 808b.

On November 30, 1951, the city council, acting pursuant to this statutory provision, adopted an ordinance which amended the 1948 appropriation and levy ordinances to show the deductions which had been made from the taxes collectible as of January 1, 1948, in reaching the net amounts of taxes receivable. The net taxes receivable figures stated in the original 1948 ordinance were identical with those stated in the ordinance as amended. The only difference between the 1948 ordinance and the 1951 amendment is that the latter spells out the details of the computations made in reaching net taxes receivable while the former gives only the resulting figures.

On its face, the 1951 amendment remedies the defect which was the basis of the objection. To avoid its effect, the objector first argues that the *Kenneth Court case* involved more than a mere absence of particulars, and that under our decision in that case the failure of the city council to show by the record of its proceedings at the time it passed the 1948 ordinance the details of its revision of the loss and cost estimates applicable to prior years' taxes compels the conclusion that the council adopted the loss and cost estimates made in those years. But the *Kenneth Court case* rested upon a different ground. There, so far as the record disclosed, the council did not revise its original loss and cost estimates; the argument made by the collector that the estimates had been revised was without proof. The court was required to make the most of the public records and held that the absence of records showing a change in loss and cost estimates indicated that no change was contemplated or made by the council. Since

that case the legislature has provided for a method of proving revisions in loss and cost estimates which were actually made. In the case before us we have official action, sanctioned by the legislature, showing affirmatively the existence of the ultimate fact in issue,—that a revision in prior years' loss and cost estimates had been made by the city council in the preparation of its 1948 budget.

The objector argues further that while an amendment spelling out particulars is permissible, our decision in *People ex rel. Schlaeger* v. *Buena Vista Building Corp.* 396 Ill. 164, makes ineffective an amendment which attempts to validate an illegal tax levy by changing loss and cost figures. This argument, resting on the premise that the 1951 amendment changed the 1948 ordinance loss and cost figures, begs the question. The record shows that both the original ordinance and the amendment state identical amounts of net taxes receivable. The amendment spells out the details of computations, including loss and cost figures, which were employed in determining those receivables in drawing up the 1948 budget. In the *Buena Vista case,* the amendment sought to delete certain appropriations and to balance the reduction in appropriations by reducing the net taxes receivable. The purpose of the amendment there involved was to change the amounts appropriated. No such purpose exists here.

The objector argues that the practice of amendment followed here precludes an attack on the accuracy of reasonableness of loss and cost figures by the taxpayer; that unless special schedules or some similar methods are used to show revisions of those figures, objections such as those in the *Bunge case* and the *Frankenstein case* could not be made. We do not agree. The taxpayer can point out that either the gross amount of taxes collectible is understated or that the deductions (including the loss and cost estimates) from that amount are overstated or unreasonably large.

Objections Nos. 5, 5B, and 5C, based on this loss and cost argument, were improperly sustained.

### THE "JUDGMENT TAX FUND" OBJECTION

Objection No. 15 challenges the validity of the entire 1948 levy of $642,170.09 for the Judgment Tax Fund. The ground of this objection is that funds in excess of the amount of the levy were available for transfer to the Judgment Tax Fund and that the necessity for any levy whatsoever ·on account of that fund was therefore eliminated.

The taxpayer's contention is based upon certain entries in the comptroller's report for 1947. That report contains a "Special Assessment Fund Comparative General Balance Sheet" which shows as assets "Cash with Treasurer" in the sum of $3,472,202.39. As liabilities it shows "Vouchers audited and warrants outstanding $94,027.47," and "Available balance to sundry accounts, $3,378,174.92." It is upon this latter item that the dispute between the parties centers. The 1947 report of the comptroller does not identify the "sundry accounts" which are involved. But by reference to the report of the comptroller for the year 1946, the objector identifies the following items: (1) "Liability of sundry warrants to Judgment Tax Fund, $188,635.83" and (2) "Liability of sundry warrants to account for paying Chicago judgments, $487,753.55;" and by an analysis of expenditures during the year 1947, he establishes that these liabilities shown in the 1946 report remained unsatisfied during 1947. He therefore contends that the total of these two items, amounting to $676,389.38, was available for transfer to the Judgment Tax Fund as of January 1, 1948, and that the availability of this sum renders unnecessary, and so illegal, the entire levy on account of the Judgment Tax Fund.

The substance of the collector's contention with respect to this item is that the objector's analysis does not accu-

rately picture the existing situation; that several million dollars of special assessment bonds issued by the city of Chicago in the past are still outstanding and that these bonds represent a claim upon any available special assessment funds which is prior to the claim of the Judgment Tax Fund for reimbursement. To establish these facts, which apparently are not set forth in the comptroller's report for 1947, the collector refers to reports of the comptroller for earlier years which show outstanding special assessment liabilities. For example, liabilities on account of outstanding special assessment bonds and vouchers in the year 1944 were in excess of $19,000,000; in the years 1943 and 1942, in excess of $20,000,000, and in the year 1941 in excess of $21,000,000. These earlier reports also identify the particular special assessment warrants against which the claims of the Judgment Tax Fund and the fund for the payment of Chicago judgments exist.

The special assessment fund balance sheet, upon which this objection is based, must be read with an understanding of the law which governs a municipality in the handling of money which it holds as the proceeds of the collection of a special assessment. Numerous decisions of this court and of the Appellate Courts have established the status of such funds and the duties imposed upon municipalities which hold them. As stated in *Chicago Flower Growers, Inc.* v. *City of Chicago,* 306 Ill. App. 571, 576, "The rules of law generally applicable have been stated in *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330, 340; also in *People ex rel. Anderson* v. *Village of Bradley,* 367 Ill. 301, and in many other cases following these decisions. Under the provisions of the Local Improvement Act the city is trustee to collect the assessments for the benefit of the holders of the particular instalments of bonds, and the rules of law as to trusts are applicable. Distribution should be made equally and pro rata to holders of the bonds of a particular instalment issued against a particular warrant."

In *How & Co.* v. *City of Chicago,* 316 Ill. App. 153, (affirmed, 384 Ill. 232,) a judgment had been entered against the city because of its failure to prorate collections on account of a special assessment warrant among the holders of bonds of that warrant. Payment of the judgment was, of course, *pro tanto* payment of the bonds involved, and when additional funds were collected on account of the warrant against which the bond was issued, the city sought to use these funds to reimburse itself. Its claim was denied. Special assessment funds, said the court, "must be applied to the balance remaining due on the outstanding bonds until they are paid in full before the city can be reimbursed."

It follows that money which comes into the possession of the city as the proceeds of the collection of a special assessment is held by the city as trustee, and must be used to satisfy outstanding special assessment bonds and vouchers before it can be used to reimburse other funds of the city for advances made to satisfy judgments or for any other purpose.

It is settled that the burden of proof to establish the facts which will sustain an objection to a tax levy rests upon the objector. (*People ex rel. Bergan* v. *New York Central Railroad Co.* 392 Ill. 525; *People ex rel. Toman* v. *Hines Lumber Co.* 385 Ill. 366; *People ex rel. Gill* v. *Diversey Hotel Corp.* 364 Ill. 298.) The record which is before us indicates that the liabilities to the Judgment Tax Fund and to the fund for the payment of Chicago judgments which are referred to in the report of the comptroller are the liabilities of particular special assessment warrants. There is no showing that funds remain in any of those special assessment warrants over and above the amounts needed to satisfy outstanding bonds and vouchers. In the absence of such a showing, special assessment moneys continue to be held in trust by the city for the benefit of the bondholders, and they may not be diverted to the reim-

bursement of other funds until the primary obligation is satisfied. The present case is distinguishable from *People ex rel. Nelson* v. *Beu,* 403 Ill. 232, where an objection like the one here involved was sustained, because the record before the court in that case failed to show by appropriate evidence the existence of outstanding liabilities on account of special assessment bonds and vouchers which had a prior claim to the funds in question. Those liabilities are shown in this record.

The objection with respect to the levy for the Judgment Tax Fund should have been overruled.

### The "Municipal Tuberculosis Sanitarium" Objection

Objection No. 13 relates to the levy of $4,500,000 for municipal tuberculosis sanitarium purposes. The objector contends that the maximum permissible levy for this purpose was $3,000,000, and that the levy in excess of that amount is invalid. The collector contends that a levy of $4,500,000 was authorized by statute.

The municipal tuberculosis sanitarium levy is authorized by section 72-1 of the Revised Cities and Villages Act. Prior to 1947, that section authorized the city of Chicago to levy at a rate which would produce the sum of $3,000,000. (Ill. Rev. Stat. 1945, chap. 24, par. 72-1.) Two amendments to that section were adopted in 1947. Senate Bill No. 320, introduced on April 23, 1947, increased the permissible levy to $4,500,000. It was passed by the Senate on June 3, and by the House on June 26. House Bill 906 was introduced on June 10, passed by the House on June 24, and by the Senate on June 27. This bill amended fifty-seven sections of the Revised Cities and Villages Act by substituting in each of those sections a reference to "the Revenue Law of Illinois," in place of a reference to "Section 162a of the 'Revenue Act of 1939,'" No other change appears to have been made by H.B. 906

in any of the sections amended, and particularly no other change was made in section 72-1.

The objector contends that H.B. 906, being the last expression of the General Assembly, limits the levy to $3,000,000. The collector's position is that the purpose of the General Assembly was to amend section 72-1 in two different respects which are not inconsistent with each other, and that the two bills should therefore be read together and both amendments· given effect.

The question thus presented is not a new one. Its frequent recurrence is due to the practical situation which confronts the General Assembly. Section 13 of article IV of the Illinois constitution requires that when an existing statute is to be amended "the section amended, shall be inserted at length in the new act." So each bill which proposes to amend an existing statute must include not only the language necessary to effect the desired change, but must also repeat all the other provisions of the section being amended, even though they have no direct bearing upon the subject matter of the amendment. And when, as has frequently happened, two unrelated amendments to the same section are adopted at a single session of the General Assembly, the repetition in each bill of those provisions of the existing law which that particular bill does not propose to change will give rise to a surface inconsistency.

The principles governing the solution of these problems have become settled. It is established that when the General Assembly amends a statute, portions of the old law which are repeated, either literally or in substance, are regarded as a continuation of the existing law and not the enactment of new law upon the subject. (Ill. Rev. Stat. 1951, chap. 131, par. 2; *S. Buchsbaum & Co.* v. *Gordon,* 389 Ill. 493; *People* v. *Lloyd,* 304 Ill. 23; *Svenson* v. *Hanson,* 289 Ill. 242.) Amendments are to be construed together with the original act to which they relate as constituting one law, and are also to be considered together

with other statutes upon the same subject as a part of a coherent system of legislation. (*S. Buchsbaum & Co.* v. *Gordon,* 389 Ill. 493; *Klemme* v. *Drainage District No. 5,* 380 Ill. 221.) In the absence of legislative intent to the contrary, and where the two acts are not so inconsistent that both cannot stand and be given effect, a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first. *S. Buchsbaum & Co.* v. *Gordon,* 389 Ill. 493.

The mechanical approach which the objector here urges upon us—a reading of the two amendments to determine literal inconsistency, followed by an automatic enforcement of the one which was adopted last in point of time—has been rejected by this court. Where acts passed at the same session of the legislature contain conflicting provisions, we have held that the whole record of the legislation is open to examination in order to ascertain the legislative intent. And when that intent is ascertained, it is given effect, irrespective of priority of enactment. (*S. Buchsbaum & Co.* v. *Gordon,* 389 Ill. 493; *People* v. *Lloyd,* 304 Ill. 23; *Mette* v. *Feltgen,* 148 Ill. 357.) As explicitly stated in the *Buchsbaum case,* (p. 501,) "In all cases the primary question is the intention of the legislature, rather than the technical priority of the passage of the acts."

Applying these principles to this case, it is clear that the intention was to make two separate and distinct changes in section 72-1. The object of S.B. 320 was to increase the authorized tax levy for tuberculosis sanitarium purposes in municipalities exceeding 200,000 population from $3,000,000 to $4,500,000. On the other hand, H.B. 906 was not concerned with the amount of the authorized tax levy. Its only purpose was to eliminate from section 72-1 the reference in its last paragraph to "Section 162a of the

'Revenue Act of 1939'" and to substitute a reference to "the Revenue Law of Illinois." That appears also to have been the purpose of amending the other fifty-six sections of the Revised Cities and Villages Act. H.B. 906 did not purport to be and was not the enactment of a new law with respect to the amount of a permissible maximum tax levy for tuberculosis purposes. The repetition in this bill of all of the other language of the section as it existed when the bill was introduced, including the then existing tax rate limitation, indicates an intention to comply with the requirement of section 13 of article IV of the constitution, rather than an intention to repeal the increased tax rate authorized by S.B. 320. Both of the enactments here involved can be given effect without inconsistency. Mechanical application of the familiar rule that where inconsistent amendatory acts are passed at different times, the last one is to be obeyed (*People ex rel. Heaton* v. *Illinois Central Railroad Co.* 295 Ill. 408; *People ex rel. Hines* v. *Baltimore and Ohio Southwestern Railroad Co.* 366 Ill. 318; *People ex rel. Schlaeger* v. *Mattes,* 396 Ill. 348; *People ex rel. English* v. *Atchison, Topeka and Santa Fe Railroad Co.* 370 Ill. 420,) would frustrate the accomplishment of the perfectly consistent objectives dealing with different subject matter expressed in S.B. 320 and H.B. 906. The clear intention of the legislature in passing the two amendments must be given effect.

In invoking the rule that the later of seemingly repugnant statutes controls, the taxpayer ignores the canon of statutory construction. that where a construction can reasonably be made by which both acts will stand it will be adopted. (*People ex rel. Davis* v. *Wabash Railroad Co.* 276 Ill. 92.) The authorities upon which the taxpayer relies, which are cited above, involve, in the main, situations in which each amendatory act related to the same subject matter and not, as here, a case in which the purposes of the two amendments are entirely different. As pointed

out in *People ex rel. Heaton* v. *Illinois Central Railroad Co.* 295 Ill. 408, 411, 412, "Two acts that are passed at the same session of the legislature are not to be construed as inconsistent if it is possible to construe them otherwise, but where it is impossible to give effect to both acts the latest in point of time will prevail."

The objector contends, in the alternative, that even if S.B. 320 and H.B. 906 are consistent, they cannot be read together because section 13 of article IV of our constitution forbids interweaving and reading together the two amendatory acts to establish the text of section 72-1. The constitutional provision invoked is, "and no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." The contention is not sound. Both S.B. 320 and H.B. 906 re-enact section 72-1 in its entirety, and neither contravenes section 13 of article IV of our constitution.

The objection to the municipal tuberculosis sanitarium levy should have been overruled.

### THE "LIBRARY MAINTENANCE FUND" OBJECTION

Objection was made to Library Maintenance Fund appropriations for machinery and equipment in the amount of $5000; motor vehicles $25,000, and furniture and fixtures, $5000. For the five years, 1943 to 1947, inclusive, appropriations for machinery and equipment totaled $23,000. During those years no expenditures were made from this account. For the same years total appropriation of $54,500 were made for motor vehicles. No part of these appropriations was spent for the purpose appropriated. For the same five years $34,000 was appropriated for furniture and fixtures. Of this total, $1,616.26 was spent during the five-year period, leaving an unexpended balance of $32,383.74. Upon the basis of these facts, the taxpayer, by his objection, charges that the 1948 appro-

priation and levy for the three purposes stated were grossly excessive, and so illegal and void. He asserts that these excessive appropriations must have been made with the intention of raising a fund for some purpose other than that for which the levy was made, or of creating a surplus for use at some future date, or with both intentions. A tax levy greatly in excess of the amount required for a particular purpose, with the intention of creating a surplus to be used for another purpose, is not a legal tax levy even though the rate be within the statutory limit. *People ex rel. Toman* v. *Signode Steel Strapping Co.* 380 Ill. 633; *People ex rel. Toman* v. *110 South Dearborn Street Building Corp.* 372 Ill. 459; *People ex rel. Hudson* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 Ill. 180; *People ex rel. Clark* v. *Baltimore and Ohio Southwestern Railway Co.* 353 Ill. 492; *People ex rel. James* v. *Wabash Railway Co.* 314 Ill. 388; *People ex rel. Price* v. *Illinois Central Railroad Co.* 266 Ill. 636.

The collector argues that war conditions made it difficult or impossible for the city to purchase the items in question during most of the period 1943-1947, and that this fact renders inapplicable the decisions relied upon by the objector. Allowing full scope to this contention, it still appears that ample time elapsed, after war conditions had terminated, to permit the city to meet the accumulated need for the items in question had it desired to do so.

Objection No. 9 to the taxes for the Library Maintenance Fund was properly sustained.

### The "Corporate Purposes" Objection

The 1948 annual appropriation and tax levy ordinances for the city of Chicago contained the following four items, "Advertising bond and voucher calls, printing special assessment bonds and other expense in connection with special assessments, $1,000;" "For expense in connection with the proposed consolidation of passenger and freight ter-

minals; to be expended upon authority of the City Council, $25,000;" "Expense in connection with the Housing Center, $5,000;" "For payment of expense in regulating, controlling and stabilizing rents in housing accommodations; to be expended upon authority of the City Council, $100,000." Objection No. 3 is that these items are not for corporate purposes and are not properly itemized.

Corporate purposes for which taxes can be levied by a municipal corporation are only such as are germane to the objects of the creation of the municipality or have a legitimate connection with those objects and a manifest relation thereto. (*People ex rel. Illinois Armory Board* v. *Kelly,* 369 Ill. 280; *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24.) The first item, advertising and printing expense in connection with special assessments, is clearly a proper corporate expense. The applicable statute (Ill. Rev. Stat. 1951, chap. 24, par. 84-94,) expressly states that expenses of this type "shall be paid by the municipality out of its general corporate fund." The objection to this item should have been overruled.

The collector concedes that under our decision in *Ambassador East, Inc.* v. *City of Chicago,* 399 Ill. 359, the fourth item was not for a corporate purpose.

The corporate authorities of the city of Chicago have power to regulate the use of the streets and other municipal property (Ill. Rev. Stat. 1951, chap. 24, par. 23-10); authority incident to local transportation problems (chap. 24, par. 23-28.1); power to regulate fire hazards (chap. 24, par. 23-72); and, in addition, power to pass and enforce all necessary police ordinances (chap. 24, par. 23-105). We are of the opinion these grants of power afford ample authority for the modest appropriation incident to the proposed consolidation of passenger and freight terminals in Chicago, an improvement which obviously would promote the enumerated corporate objectives.

The city of Chicago has been granted power to acquire by purchase, condemnation, or otherwise, real property necessary or appropriate for the rehabilitation or redevelopment of any blighted or slum area. (Ill. Rev. Stat. 1951, chap. 24, par. 23-103.1.) The challenged housing appropriation is reasonably related to express corporate purposes of the city of Chicago. The objection to the item of expense in connection with the Housing Center was improperly sustained.

The taxpayer contends, in the alternative, that the last two appropriations are not sufficiently itemized. Itemization requirements must be accorded a practical and common-sense construction; it is not necessary to state each purpose for which a tax is levied where each purpose is properly embraced.in one general designation, particularly where it is difficult to determine, in advance, the precise amount of the several items. (*People ex rel. Toman* v. *Estate of Otis,* 376 Ill. 112.) The appropriations were sufficiently itemized.

### THE "EXCESS LEVY" OBJECTION

Objection No. 4 to the 1948 levy for corporate purposes, which charged that the total estimated assets available for appropriation exceeded the total appropriations by $20,321.50 was sustained. The collector argues merely that the amount involved is so small that sustaining the objection will not reduce the tax levy to the extent of one mill. It is settled that where the invalidity of items of taxes to which objections have been interposed would not alter the tax rate extended, the objections will not be considered upon review, (*People ex rel. Toman* v. *North Shore Theatre Bldg Corp.* 375 Ill. 208,) but where, as here, the total of the items invalidated upon appeal will produce an illegal rate sufficiently large to alter the rate extended, the objections will be considered. (*People ex rel. Nelson* v.

*Trustees Central Manufacturing Dist.* 407 Ill. 291.) The objection was properly sustained.

Objection No. 18 was based upon the proposition that the loss and cost estimates attributable to levies attacked as illegal were void to the extent that they were based upon the illegal portions of the levies. The objection was sustained to the extent that it related to objections 3, 9, and 13. In view of our disposition of objections 3, 9, and 13, it follows that objection No. 18 was properly sustained in part, but in part was improperly sustained.

The judgment of the county court of Cook County, to the extent that it sustained the following objections: Nos. 4, 9 and 21, is affirmed; to the extent that it sustained objections Nos. 1, 2, 5, 5B, 5C, 8, 12, 13, 14, 15, 22, 23, and 24, is reversed; to the extent that it sustained objections Nos. 3 and 18, is affirmed in part and reversed in part. The cause is remanded, with directions to proceed in accordance with this opinion.

*Affirmed in part; reversed in part and remanded, with directions.*