(No. 26710.—

THE PEOPLE *ex rel.* John Toman, County Collector, Appellant, *vs.* BALTIMORE & OHIO & CHICAGO RAILROAD CO., Appellee.

*Opinion filed January 21, 1943.*

Smith, J., dissenting.

Thomas J. Courtney, State's Attorney, and Barnet Hodes, Corporation Counsel, (Joseph F. Grossman, Otho S. Fasig, Emmett Harrington, and J. Herzl Segal, of counsel,) for appellant.

Robert N. Holt, and Pomeroy Sinnock, for appellee.

Mr. Justice Murphy delivered the opinion of the court:

The county collector of Cook county presented the delinquent list for the year 1939 to the county court and asked for judgment and order of sale. The Baltimore & Ohio & Chicago Railroad Co., appellee, objected to various taxes levied against its property, one of which was an item levied by the city of Chicago. Appellee's objection to such item was sustained and the collector appealed to this court.

In the city's appropriation ordinance for 1939 there was listed in estimate No. 1 of the corporate-purpose fund a liability as follows: "Reimbursement to undistributed taxes $894,898.48." The factual background from which it is contended that the said amount represents a liability of the city for which a levy will be authorized is as follows. The city treasurer carried an account on his books designated as the undistributed-tax fund, in which he deposited moneys collected from the levies of previous years. On June 10, 1938, he had in said fund money collected from levies of previous years in amounts as follows: 1930, $369,638.57; 1931, $137,759.84, and for the year 1932, $387,500.07, making the total of the item in controversy. These amounts for the respective years had not been dis-

tributed to the fund indicative of the purpose for which it was levied and the evidence does not show the purpose or purposes for which said money was levied nor the number of funds to which it will be distributed.

On the date of June 10, 1938, the city council adopted an ordinance the effect of which was that the undistributed-tax fund loaned said sum to the general corporate-purpose fund and the city treasurer was directed to transfer said amount of $894,898.48 to the latter account. It was recited in the ordinance that the delay in making the distribution of the collected taxes to the several funds for which they were levied was occasioned by the "confusion that has arisen due to the objections to the tax levies." It further recited that said money for the respective years was "held in reserve until the fund or funds to which the said taxes are to be finally distributed can be ascertained from the final report of the county collector." The concluding section of the ordinance provided "When the said proper final distribution shall have been determined, the amount levied and collected for purposes other than the General Corporate Purpose Fund shall be repaid to the respective funds to which they belong."

The question as to whether there had been unreasonable delay in distributing the money held in the undistributed-tax fund to the funds for which it was levied is not presented on this record. Appellant contends that the enactment of the ordinance transferring the sum of $894,898.48 from the undistributed-tax fund to the general corporate-purpose fund was, in effect, a temporary loan of that amount from the former fund to the latter for which the city was required to levy a tax to reimburse the undistributed-tax fund to that extent. Support for such contention is claimed to be found in the holdings of this court in *Gates* v. *Sweitzer*, 347 Ill. 353, and *People ex rel. McDonough* v. *New York Central Railroad Co.* 355 id. 80, which approves the making of a temporary loan from one fund to another. Appellee contends that since the sum of $894,898.48 was

cash prior to the adoption of the ordinance of June 10, 1938, it should have been listed in the estimated assets for that year as cash or as a credit and that without such a credit to correspond with the liability the tax levy is excessive in said amount.

The use the city authorities made of the undistributed-tax fund and the purpose for which the money that was entered in the fund was levied are matters of considerable significance in this case. It appears from the ordinance of June 10, 1938, that the sole and only use of the undistributed-tax fund was as a repository for the temporary holding of tax money which had been collected on the levies of prior years and which for various reasons could not be distributed to the funds and purposes for which it was levied. It is not claimed that the sum involved was a surplus remaining after the needs of the purpose for which it was levied had been paid. Under such circumstances the adoption of the ordinance ordering the transfer and the act of the city treasurer in entering the tax money in the undistributed-tax fund did not take from it its identity with the purpose for which it was levied. Even though it was in the undistributed-tax fund, it was expendable only for the purpose for which it was levied. It would necessarily follow that there could not be given to the undistributable-tax fund the characteristic found in many other funds of having embodied in it a separate and distinct purpose for which taxes could be levied.

Since the use of the money in the undistributed-tax fund was limited in its application to the purposes for which it was levied, it would seem necessary to determine in this case whether the city council, in ordering the transfer of the sum from one fund to the other, was correct in treating it as a loan from the undistributed-tax fund rather than the several funds representative of the purposes for which it was levied. Such question must be considered in the light of the requirements of section 2(a) of article 7, (Ill. Rev. Stat. 1939, chap. 24, par. 102,) in refer-

ence to setting forth in the annual appropriation ordinances estimates of current assets and liabilities of each fund. The pertinent parts of the act are: "Such ordinance shall set forth estimates, by classes, of all current assets and liabilities of each fund of such city or village, as of the beginning of said fiscal year, and the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof." Disregarding the proviso in that section, that estimates of taxes to be received from the levies for the years prior to 1939 for general corporate purposes and estimates of the liabilities of the general corporate fund prior to January 1, 1935, shall not be included in any such ordinances, it will be noted that the part of the section quoted provides that the appropriation ordinance shall set forth as of the beginning of the fiscal year estimates of current assets and current liabilities as to each fund. If the tax money in the undistributed-tax fund was earmarked for the purposes for which it was levied, it is evident that it would have to be listed as an asset of the fund representative of the purpose for which it was levied, and against this asset would be the liabilities of such fund. If it be considered as an asset of the undistributed-tax fund, then the liabilities of the fund for which it was levied are not included in the appropriation ordinance. If there are no further existing liabilities of the purpose for which it was levied, then it is surplus and readily distributable to other funds, but not in the form of a loan from one fund to another.

As stated, the record does not disclose the purpose or purposes for which the $894,898.48 was levied, nor is it pointed out what became of the liabilities it was raised to pay. It being necessary to preserve the identity of the money to the purpose for which it was levied and account for it in the appropriation ordinance as an asset of the fund, and charge against it the unpaid liabilities of the fund, it follows that the transfer from the undistributable-

tax fund to the general corporate-purpose fund as a loan can not be made the basis of a levy to raise money to reimburse the undistributed-tax fund.

Reference is made to *Gates* v. *Sweitzer, supra,* and *People* v. *New York Central Railroad Co. supra,* where it was held that money in a fund not needed immediately might be transferred to another fund as a temporary loan from one fund to another. The question presented here was not before the court in those cases and there is nothing in those cases, or others that announced the same rule, that is inconsistent with the views expressed. The reference therein to the right of the city authorities to advance money from one fund to another for temporary purposes, without constituting an unlawful diversion, was said in reference to funds that come within the requirements of the statute as to appropriation ordinances.

Appellant contends that the trial court erred in sustaining an objection to an appropriation of $32,500 listed in the corporate-purpose fund for expenses incurred by the city comptroller. He contends that the item produced a tax rate per hundred dollars of assessed valuation which was so small that it would not increase or decrease the final rate of $.10 held illegal by the trial court. The appellee replies that other taxpayers interposed the objection but that it did not include said item in its list of objections and disclaims any interest in the appeal from that part of the order. The taxpayers who interposed the objection to this particular item are not before this court and therefore we can not consider the objection.

For the reasons assigned, the judgment of the county court was correct and is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SMITH, dissenting.

The facts in this case were stipulated in the record. Prior to the preparation of the estimate of assets and liabilities, as of January 1, 1939, contained in the annual ap-

propriation bill, pursuant to Illinois Revised Statutes, 1941, chapter 24, paragraph 102, the city, by an ordinance duly passed, borrowed the sum of $894,899.48 from the undistributed-tax fund for the use of the general corporate fund. It had the right to do that. (*People ex rel. McDonough* v. *New York Central Railroad Co.* 355 Ill. 80; *Gates* v. *Sweitzer,* 347 id. 353.) Having lawfully borrowed said funds it became obligated to repay the same, from the general corporate fund to the undistributed-tax fund, from which they were borrowed.

The sole question raised by appellee in the court below and on this appeal was whether the obligation of the city to repay said amount, from the general corporate fund to the undistributed-tax fund, should have been included in the estimate as a liability of the city. It was argued that such item was improperly included in the estimate as a liability; that if it was properly included as a liability, the right of the city, as owner of the undistributed-tax fund, to receive the money borrowed, when repaid to that fund, should also have been included as an asset.

Upon the record, as made in the trial court and as presented to this court, clearly the liability of the city to repay the borrowed funds, was a liability of the city, payable from the general corporate fund and was properly included in the estimate, as a liability. It is equally clear that the rights of the city, as the owner of the undistributed-tax fund, to receive the borrowed money when repaid, was an asset of the city. It was not, however, an asset belonging to the general corporate fund, unless the funds borrowed belonged to that fund. If the borrowed funds were raised and appropriated for purposes other than the general corporate fund, the right to receive the same, when repaid, could not be included in the estimate as an asset belonging to the general corporate fund.

No question was raised or argued by appellee as to the right of the city to hold money in the undistributed-tax

fund. Neither was any question raised as to the right of the city to borrow from that fund for the use of the general corporate fund.

On petition for rehearing appellee raised, for the first time, the question of the right of the city to hold and accumulate money in an undistributed tax fund. This was a new point, raised for the first time in the petition for rehearing.

The effect of the majority opinion is, without definitely holding, that the funds here involved were improperly held in the undistributed-tax fund, and are, therefore, treated as assets belonging to the general corporate fund. This is the effect of the opinion notwithstanding all of said funds may have been raised and appropriated for other purposes.

The opinion makes it clear that the purposes for which the money in the undistributed-tax fund was raised, cannot be determined from the record. It holds, in effect, that in the absence of any showing as to the purposes for which said funds were raised, they must be treated as having been raised and appropriated for general corporate purposes. This places upon the city the burden of sustaining the tax levied and ignores the settled rule that the burden of showing the invalidity of a tax objected to is always on the objector.

However desirable it may be to establish a rule imposing a limitation upon the right of the city to accumulate money in an undistributed-tax fund, no question of that kind is involved in this case or presented by the record, on which the case was submitted. The funds borrowed from the undistributed-tax fund may all belong to special funds which cannot be lawfully used for general corporate purposes. In any event, if any of the borrowed funds would, when distributed, belong to the general corporate fund, the burden was on the objector to establish that fact. Its failure to do so neither warrants nor justifies placing the burden on the city to sustain the tax by showing that the

borrowed funds did not belong to the general corporate fund when there was no attempt by the objector to challenge the tax on that ground, or to establish its invalidity by evidence. No such question was ever raised or presented until on rehearing. The opinion concedes, as it must, that there is nothing in the record from which it may be determined that any part of the borrowed funds were raised or appropriated for, or would ultimately be distributed to, the general corporate fund. If the taxes were objected to on that ground the burden of sustaining the objection would be on the objector. This is elementary.

As I view it, the effect of the opinion is that in a total absence of evidence or facts, concerning the character of the funds borrowed, the burden is placed upon the city, in order to sustain a tax, presumed to have been lawfully levied, by showing that none of the funds involved may ever be properly distributed or belong to the general corporate fund. This is not in accordance with my understanding of the rule which has been followed in cases involving tax objections from time immemorial. If it is the purpose of the opinion to establish the proposition that the city may not borrow from the undistributed-tax fund, funds which, when distributed, will ultimately belong to the corporate fund, such holding should be made clear from the opinion. In that event, obviously the objection to the taxes should not be sustained on this record, where the question is not involved. The cause should be remanded to the trial court with directions to hear evidence as to the character of the borrowed funds and the purposes for which they are raised and to which they were appropriated. For these reasons I am unable to agree with the majority opinion.