(No. 33024.—

THE PEOPLE *ex rel.* John B. Brenza, County Collector, Appellee, *vs.* CHROMIUM CORPORATION OF AMERICA, Appellant.

*Opinion filed May 24, 1954—Rehearing denied July 13, 1954.*

MacLeish, Spray, Price & Underwood, and Holt & Kearney, both of Chicago, (Robert S. Cushman, and John J. O'Brien, of counsel,) for appellant.

John Gutknecht, State's Attorney, John J. Mortimer, Corporation Counsel, Frank R. Schneberger, and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, (Joseph B. Fleming, Robert J. Nolan, Gordon B. Nash, Edward E. Plusdrak, Thomas M. Thomas, and Thomas F. Scully, of counsel,) for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook County which overruled the objections of Chromium Corporation of America to 1949 taxes levied by the city of Chicago and by the board of education of the city of Chicago.

In the case of each of the taxing bodies the objection centers about the way in which certain cash in the hands of the county collector of Cook County was treated in the taxing bodies' 1949 appropriation ordinance or budget. When the city of Chicago adopted its annual appropriation ordinance for 1949 the county collector held $5,575,000 of cash collected from prior years' city taxes in a special and undistributed account for the purpose of paying tax refunds. The bulk of this amount came from 1942, 1944 and 1946 city real-estate collections. When the board of education's 1949 budget appropriation ordinance was adopted, the county collector held $2,925,000 in cash, made up, in the main, of board of education real-estate taxes for the years 1942, 1944 and 1946. This amount was likewise held for the purpose of paying tax refunds. Each municipality was aware of the existence and amount of the funds so held.

The basis of the objection is that these amounts were "legally available" to each of the taxing bodies for appropriation, and should have been treated as available cash in the respective appropriation ordinances. While the arguments of the two taxing bodies to sustain the judgment of the county court are not in all respects the same, each of them challenges the underlying assumption of the objector that the moneys in question while in the hands of the county collector were available for appropriation, taking the position that the amounts in question were not certain to be received during the fiscal year for which the appropriation was made, and therefore need not be treated as cash available for appropriation.

The problem in this case grows out of the legislation relating to the payment of taxes under protest and the refunding of taxes with respect to which objections are sustained, as well as the practice of municipalities and public officials operating under that legislation. In 1933 the section which is now section 194 of the Revenue Act of 1939 was amended to allow, for the first time, the payment of taxes under protest, with power in the county court to enter judgment directing the refund of all or part of the protested taxes. In the form in which it stood at the time this case arose, it provided: "No protest, or specification of the application of the payment of any tax shall be taken into account or be a cause of delay in the distribution of tax collections among the taxing bodies, but it shall be the duty of the collector to deduct from the taxes of any taxing body for any year the amount of any tax for any year held illegal by the final order of a court, and use the amount deducted to equalize the distribution." (Ill. Rev. Stat. 1947, chap. 120, par. 675.) Since the statute was thus amended the present county treasurer and *ex officio* county collector of Cook County and his predecessors have established a practice of maintaining reserve

funds from which to make refunds as ordered by the county court. It appears that while there is no precise predictability about the time when these refund orders will be presented to the county collector, experience has shown that the bulk of the refunds are made shortly after final judgment is entered with respect to the validity of the tax levy for a particular year. Because these refund orders are presented *en masse* shortly after the legal rate is finally determined, refunds are generally made in amounts of substantial size, not infrequently exceeding a million dollars on a single day.

It is the position of the county collector that the mass presentation of refund orders, which he is required by statute to pay upon presentation, requires him to keep his accounts in such a condition that he is able to comply with those orders without seriously disrupting the distribution of current tax collections to the taxing bodies entitled to them. Upon these grounds, and upon decisions of this court to the effect that the provision for the payment of refunds in cash is mandatory, (*People ex rel. Sweitzer* v. *Orrington Co.* 360 Ill. 289, 293,) and that the fact that the collector has distributed all tax collections to the taxing bodies entitled to them, and has no money with which to pay refunds, is not a defense to a *mandamus* action to compel him to pay the refunds, (*People ex rel. Baird and Warner, Inc.* v. *Lindheimer*, 370 Ill. 424,) the collector argues that the maintenance of the reserve fund is proper, and in May of 1948 advised officials of the city of Chicago that "attempts to force the transfer of all reserves held for tax refunds would be met with a refusal and would not be complied with except on the final order of a court of last resort."

Despite the refusal of the county collector to transfer to the taxing bodies the funds which he held as a reserve for the payment of tax refunds, the objector maintains that these moneys were "legally available" and therefore

must be considered as cash in making up the appropriation orders. If these funds had been so considered, their existence as available cash would have reduced the amount necessary to be raised by taxation and, therefore, the objector argues, the tax levy of each of the taxing bodies is excessive to the extent of the amount held in the county collector's reserve.

We do not agree with the basic contention of the objector that the funds in question were available for appropriation within the meaning of the statutes governing the appropriations of the two taxing bodies. To establish the availability of these moneys and their status as the equivalent of cash, the objector relies upon *People ex rel. Toman* v. *Baltimore & Ohio & Chicago Railroad Co.* 381 Ill. 585, and *People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530, 537, in both of which cases it was held that cash held by the city treasurer in an undistributed tax fund must be included as an asset in the appropriation ordinance. Concerning these cases, the objector says, "And the fact that the City Treasurer instead of the County Collector held the cash in the *B. & O.* and *Fleetwood cases* cannot possibly make any difference because in both situations the controlling statutes make the money involved available to the city and taxpayers are entitled to be credited with it." But in those cases the funds in question had already been distributed to the city treasurer and were in the city treasury in the form of cash at the time the city ordinances were adopted. In the present case the funds in question were in the hands of an elected county official who insisted upon his right and duty to retain those funds and to refrain from delivering them to the taxing bodies.

The objector next contends that the taxing bodies were legally obligated to institute *mandamus* actions during the year 1948 to compel the county collector to deliver their share of the reserve account to them, and that only in the event the case was still pending, in the·trial court or on

appeal, on December 31, 1948, would there be a firm basis for determining that the cash would not be available for appropriation in 1949. The dilemma which confronted the county collector by reason of the statutory command that he pay refunds upon presentation of orders therefor, implemented as it is by our decision in *People* v. *Lindheimer,* 370 Ill. 424, on the one hand, and the necessity for prompt distribution of tax collections to the taxing bodies in order that their obligations might be met and their credit maintained on the other, was neither simulated nor unrealistic. Clearly, the position taken by the collector, whether or not it would ultimately be sustained, was not so frivolous as to require that the municipalities challenge it by legal proceedings or suffer the consequences in terms of invalidity of their tax levies. Availability of the remedy of *mandamus* was not confined to the taxing bodies alone. If, as the objector argues, the practice of the county collector with respect to the maintenance of a reserve for the satisfaction of refund orders is illegal and operates to its prejudice, it can secure a direct determination of the matter by a *mandamus* action.

The concept of legal availability has its place, and we have frequently held that funds which are unconditionally due to a municipality must be shown as assets. But, as we pointed out in *People ex rel. Brenza* v. *Edwards,* 413 Ill. 514, taxation is a practical business. The accuracy of a municipality's estimates of available revenue may determine whether or not its policemen, firemen and school teachers can be paid. The interests of taxpayers other than the objector in the continued maintenance of a proper level of services are entitled to consideration. The fact that a disputed claim exists, which might conceivably be litigated to a successful conclusion within the fiscal period for which a budget is being prepared, does not automatically require that that claim be treated as cash in the preparation of budget estimates.

The objector suggests that unless the judgment of the county court is reversed, and its objection sustained, the amount of funds held in reserve for the payment of tax refund orders can be grossly exaggerated. The fact, however, that the amounts taken into account in determining the size of the county collector's reserve fund are matters of public record removes any serious possibility of exaggeration.

With respect to each municipality the objector advanced an alternative objection, also overruled by the county court. The grounds of the alternative objection need not be discussed in detail, however, because, to the extent that they are not governed by what has been said, they involve the contention with respect to interfund debts and credits said to arise from the method employed in paying refunds which was disposed of by our opinion in *People* v. *Edwards,* 413 Ill. 514.

The judgment of the county court of Cook County is affirmed.

*Judgment affirmed.*