People of the State of Illinois ex rel. County of St. Clair, Illinois, et al., Petitioners, v. Leonard O. Reinhardt, as County Treasurer, etc., et al., Respondents.

Gen. No. 64-7.

Fifth District.

August 8, 1964.

Sam S. Pessin, of Belleville, for petitioners-appellants and cross-appellees. Roberts, Gundlach, Lee &

Stubbs, of East St. Louis (R. E. Eggmann, Jr., of counsel), for respondents-appellees and respondents-appellants. Pope and Driemeyer, of East St. Louis, for counterdefendant-appellee and counterdefendant-appellant.

John M. Karns, Jr., State's Attorney, Eugene H. Widman, Assistant State's Attorney, of Belleville, for petitioners-appellees. Wagner, Conner, Ferguson, and Bertrand & Baker, of East St. Louis (John M. Ferguson and Harold G. Baker, Jr., of counsel), for counterclaimants-appellees.

WRIGHT, JUSTICE.

This cause was instituted in the Circuit Court of St. Clair County, Illinois, by various taxing bodies situated in said county, their respective treasurers and certain taxpayers of said district (as petitioners) against Leonard O. Reinhardt, as County Treasurer and ex officio County Collector of St. Clair County, Illinois. Petitioners requested that Leonard O. Reinhardt, as County Treasurer and ex officio County Collector of St. Clair County, Illinois, be required by Writ of Mandamus to distribute to the treasurers of the taxing districts of St. Clair County their just and proper distributive portions of all real estate taxes paid under protest for the year 1959 and all prior years and all personal property taxes paid under protest for the year 1959 and all prior years, all accruals to said protested taxes and all personal property taxes for years subsequent to 1959 on which timely petition had not been filed in accordance with the applicable statute.

Leonard O. Reinhardt, as an individual; Daniel F. Ring, as an individual and as the successor to Leonard O. Reinhardt, as County Treasurer and ex officio County Collector of St. Clair County, Illinois, and

Maryland Casualty Company, the surety on the official bonds of both Reinhardt and Ring, requested and were granted leave to intervene.

Leonard O. Reinhardt, as County Treasurer and ex officio County Collector and individually; Daniel F. Ring, as County Treasurer and ex officio County Collector and individually; and Maryland Casualty Company, a Corporation, filed their counterclaim for Declaratory Judgment against all of the original petitioners, as individuals and as representatives of the class consisting of all other taxing districts in St. Clair County and against the remaining respondents, Illinois Central Railroad Company, Terminal Railroad Association of St. Louis and Union Electric Company, individually and as representatives of the class consisting of all other taxpayers in St. Clair County who had paid their general real estate or personal property taxes under protest.

On motion of the intervenors (counterclaimants) the court entered an order severing the counterclaim from the action pending on the petition for a Writ of Mandamus and fixed a date for a hearing on the counterclaim.

The section for Declaratory Judgment seeks a determination of the following questions: (1) When should the County Collector distribute to the various taxing districts real estate and personal property taxes which have been paid under protest? (2) What are the rights and duties of the County Collector to invest such protested taxes pending final distribution to the parties entitled to receive them? and (3) Who is entitled to the interest which has been earned and accrued by reason of the collector's investment of the protest tax funds?

The record discloses that the County Collectors of St. Clair County have uniformly withheld from dis-

tribution to the various taxing districts all real estate and personal property taxes paid under protest for which a formal written objection or petition for re-fund has been timely filed in the County Court pending the determination of the validity of the protested taxes and the entry of a final order of court directing the refund or distribution of the protested taxes.

Upon instructions from the Board of Supervisors of St. Clair County, Illinois, the predecessors of Mr. Reinhardt transferred the protest tax funds to time deposit accounts earning interest. During his term in office, Mr. Reinhardt renewed and added to such deposits and Daniel F. Ring, the successor to Mr. Reinhardt, has continued that practice. All of the interest earned and accrued on the protested tax funds has been held in a segregated account by the County Collector and none has been distributed.

This cause was tried before the court, without a jury, and at the conclusion of the evidence, the court entered an order directing the County Treasurer ex officio County Collector of St. Clair County, Illinois, as follows:

(a) Continue to withhold until final judicial determination so much of the real estate taxes of each taxpayer which are paid under protest as is attributable to the illegal rate or valuation specified in the protest and in substantiation of which an appropriate, timely objection is filed in the County Court.

(b) Distribute to taxing bodies entitled thereto, real estate taxes paid under protest if a timely objection is not filed and such distribution shall be made when the order of the County Court granting judgment becomes final.

(c) Continue to withhold until final judicial determination so much of the personal property taxes of each taxpayer which are paid under protest until and if a petition is filed by the taxpayer in the County Court within one year after such payment.

114

(d) Distribute to the taxing bodies entitled thereto, personal property taxes paid under protest if a timely petition is not filed.

(e) In his discretion make short term deposits, as described, in chapter 120, section 673–a, Illinois Revised Statutes, 1961.

(f) Distribute the total accrued interest, earned as a result of the protested tax money being deposited in an interest-bearing account, to the County General Fund of St. Clair County, Illinois; this distribution is to include any and all interest monies now in the hands of the County Treasurer of St. Clair County, Illinois, as a result of protested tax money and is to include all the interest money earned prior to August 1, 1961, and also after that date, and in the future, the County General Fund of St. Clair County, Illinois, is to receive all earnings accrued on such investment as provided in section 673–a of the Revenue Act.

(g) To comply with Illinois Revised Statutes, 1961, chapter 120, section 781, any real estate taxes paid under protest shall be distributed three years after the date the protest is received; however, this section is applicable only to real estate taxes levied, assessed and extended after the effective date of the amendment, this is, August 1, 1961, thus applying only to the taxes of 1962 and subsequent years.

It is from this order of the trial court that the counterdefendants bring this appeal.

■ ■ It is well established that the statutes or amendments to statutes should be construed prospectively and not retrospectively unless they contain express language declaring them to be retrospective. Champaign County Bank & Trust Co. v. Jutkins, 29 Ill2d 253, 193 NE2d 779; Valentin v. D. G. Swanson & Co., 25 Ill App2d 285, 197 NE2d 14. It is equally well established that the purpose of an action under

115

the Declaratory Judgment Act is to secure binding declarations of the rights of parties interested in a controversy but does not authorize a court to grant declarations of rights involving mere abstract propositions of law or to grant a declaration of rights where no actual controversy exists. Spalding v. Granite City, 415 Ill 274, 113 NE2d 567; Beck v. Brinks, 19 Ill2d 72, 165 NE2d 292.

■■ There has been no claim asserted to interest earned subsequent to August 1, 1961, and no demand for distribution of protested tax funds has been made under the provisions of section 781, chapter 120, Illinois Revised Statutes, as amended, effective August 1, 1961, in this cause. That being true, no actual controversy exists with respect to the 1961 amendments to the statute and the trial court was without jurisdiction in this cause to declare the rights of the parties or to order future compliance with either section 673–a or the three year limitations set forth in section 781, chapter 120, 1961 Illinois Revised Statutes. The application of the Declaratory Judgment Act must be restricted to questions that are within the province of a court to determine. It cannot be construed as authorizing a court to declare rights involving mere abstract propositions of law without regard to the interest of the parties in such questions. Saline Branch Drain. Dist. v. Urbana-Champaign Sanitary Dist., 399 Ill 189, 77 NE2d 158.

Prior to 1933, there was no common law or statutory authority for the payment under protest of real estate or personal property taxes. The Legislature in 1933 amended the Revenue Act to allow payments of taxes under protest and refunds if the protest was judicially allowed. This legislation was no doubt enacted as a result of the chaotic condition in revenue collections brought about by the depression. Since the protested tax fund was created by the amendments to the Revenue Act from 1933 to 1959, and the peti-

tion seeks an order directing the distribution of the protested tax and accruals thereto for the year 1959 and all prior years, the right of the party to the protested taxes fund and the interest thereon must be based upon the provisions of the Revenue Act as it existed in 1959.

██ The Revenue Act of 1939, as amended through 1959, contains no express provision for the distribution of protested tax funds, nor does it contain any express provisions dealing with the authorization to invest the protested tax funds. Where there are no express provisions contained in the statutes, the legislative intent is controlling and must be ascertained from the general provisions of the statute, the judicial interpretations of the statute, and the political and economic conditions giving rise to the statute. The provision of the Revenue Act of 1939, as amended to 1959, pertaining to the protest of taxes on real estate are contained in section 194 and section 300 of the Revenue Act of 1939, as amended, 1959 Illinois Revised Statutes, chapter 120, sections 675 and 781. The pertinent portions of said sections are as follows:

> "Section 194: . . . no protest, or specification of the application of the payment of any tax shall be taken into account or be a cause of delay in the distribution of *tax collections* among the taxing bodies, but it shall be the duty of the collector *to deduct* from the taxes of any taxing body for any year the amount of any tax for any year held illegal by the final order of a court, and use the amount deducted to equalize the distribution.

> "Section 300: . . . but if, from no fault of the collector, he fails to obtain judgment and sale of delinquent real estate, or judgment fixing the correct amount of any taxes paid under protest at the time required by this Act, he shall be allowed, in his settlements, a *temporary credit* for the

117

amount of taxes and special assessments in such delinquent list and *for the amount of such taxes paid under protest,* . . . the amount of any taxes paid under protest shall be *accounted for and paid* in accordance with the judgment of the court *immediately after such judgment is rendered and has become final."* (Emphasis ours.)

Since section 300 of the Revenue Act of 1939, as amended, provides that the County Collector shall be allowed a temporary credit for the amount of taxes paid under protest and since it directs that the amount of taxes paid under protest shall be accounted for and paid in accordance with the judgment of the court immediately after such judgment is rendered and becomes final, in our opinion, it is clear that the Legislature intended that such fund should be held in a reserve account and should not be considered funds of the taxing district and should not be distributed until the final order of the court. If the Legislature intended these funds to be considered *"tax collections"* and distributed to the taxing bodies as provided in section 194, chapter 120, 1959 Illinois Revised Statutes, there would be no need to allow a temporary credit to the County Collector in making his settlement and account as there would be nothing to prevent his distribution of said funds.

Although this precise question has not been decided by a court of review of this state, this interpretation is in harmony with the expressions of the Illinois Supreme Court in People ex rel. Sweitzer v. Orrington Co., 360 Ill 289, 195 NE 642; People ex rel. Baird & Warner v. Lindheimer, 370 Ill 424, 19 NE2d 336; and People ex rel. Brenza v. Chromium Corp. of America, 3 Ill2d 271, 120 NE2d 540. In People ex rel. Sweitzer v. Orrington Co., supra, the trial court sustained the objections to the tax paid under protest but denied

the petition for the return of the amount of taxes paid under protest. On appeal, the Supreme Court held that under the statute, the provisions for the refund of the protest tax payment is as mandatory as the provision for the payment of the tax under protest and directed the trial court to enter an order for the refund. In People ex rel. Baird & Warner v. Lindheimer, supra, the County Collector had disbursed the protested tax funds to the taxing body before a ruling was made upon the validity of the tax objection. The tax objection was allowed and the taxpayer brought a mandamus action for a refund of the taxes paid under protest. The Supreme Court held that prior distribution of the fund was no defense to a mandamus action against the County Collector. In People ex rel. Brenza v. Chromium Corp. of America, supra, the County Collector held a substantial sum of money paid to him as protested taxes in a special undistributed reserve account. The amount allegedly due each taxing body was not included in the appropriation ordinances of any of the taxing districts. The Chromium Corporation of America objected to the tax rate upon the theory that the protested tax funds in the hands of the County Collector were funds legally available to the taxing districts and should have been included in the budget as funds available to the taxing body. The Supreme Court in overruling the objection held that the funds in the reserve account of the County Collector were not funds available for appropriation until they were actually disbursed to the treasurer of the taxing body.

The General Assembly has further clarified the legislative intent by the 1961 amendments to the Revenue Act of 1939. In 1961, both section 194 and section 300 of the statute were amended and expresses this intent in unequivocal terms. The pertinent portion of said sections, as amended, are as follows:

"Section 194: . . . no protest, or specification of the application of the payment of any tax shall prevent or be a cause of delay in the distribution of tax collections among the taxing bodies *of any taxes collected which were not paid under protest.*"

"Section 300: . . . the amount of any taxes paid under protest *shall be distributed as provided for in section 194 of this Act* and any refund ordered by the court shall be accounted for and paid in accordance with the judgment of the court. *Protested taxes not so distributed by a county collector, but withheld for the making of refunds ordered by the court, in any event, shall be distributed within 3 years from the date such protest was filed* with the collector." (Emphasis ours.)

■ The 1961 amendments to the Revenue Act are to be construed prospectively and not retrospectively and are not controlling in this cause but they do show the continuation of the legislative intent that the protested tax fund shall be withheld from distribution pending a final order of a court.

Although the Revenue Act of 1939, as amended through 1959, contained no express provision which authorized the County Treasurer ex officio County Collector to invest monies coming into his hands as protested taxes, the question of investment of funds generally and of the distribution of the interest earned on funds held by the County Treasurer or any county officer is not new to the courts of this state. Nor, is the argument that the office of County Treasurer and the office of County Collector are separate and distinct offices new or novel to the question of payment of taxes under protest.

As early as 1875, the Supreme Court of Illinois was presented with the question of the distinction between the office of County Treasurer and the office of Coun-

120

ty Collector in the case of Kilgore v. The People, 76 Ill 548. In the Kilgore case, supra, the Supreme Court held that the office of County Treasurer and County Collector were but one office with different duties. In the following year, 1876, the distinction between the office of County Sheriff and office of County Collector was presented to the Supreme Court in the case of Hughes v. People, 82 Ill 78, and the court held that the office of Sheriff and the office of County Collector were but one office with different duties. In that case the additional question of the proper disposition of interest earned on monies held by the County Sheriff as ex officio County Collector was presented to the court and the court held that such money was a *fee, perquisite or emolument* received within the meaning of section 52 of the Fees and Salaries Act and as such, must be paid into the General County Treasury. Later, the question of disposition of interest earned on funds in the hands of the County Treasurer ex officio County Collector was presented to the Supreme Court in the case of County of Lake v. Westerfield, 273 Ill 124, 112 NE 308, and the court following Hughes v. People, supra, held that a county may maintain a suit against a County Treasurer to recover interest received by him on public funds.

This was the status of the law in Illinois when the General Assembly in 1925 amended section 13 of the County Treasurer's Act, 1959 Illinois Revised Statutes, chapter 36, section 29, and added the following provision:

"Section 29: . . . provided, that of the moneys so received by or so credited to the county treasurer as interest on the balances maintained by him, the county treasurer shall pay to each school district in the county, such portion of said interest as the total of *school taxes* of such school district bears to the entire amount of *taxes collected* and

121

not paid over; *it being the intention of this Act to have all moneys earned as interest on school funds, in the hands of the county treasurer, credited to and paid over to the school district entitled to the same, instead of to the general county fund.*" (Emphasis ours.)

At the time of this amendment, there was no provision in the statute for the payment of taxes under protest and no legal reason existed for the County Treasurer ex officio County Collector withholding school taxes from immediate distribution. Section 13 of the County Treasurer's Act, supra, remained in this form until 1961 when the General Assembly added section 192a to the Revenue Act of 1939, 1961 Illinois Revised Statutes, chapter 120, section 673a, authorizing the County Collector to invest the proceeds of any taxes paid under protest and directing that all earnings accruing on such investments shall be paid to the General Fund of the county. It was at this time, that section 13 of the County Treasurer's Act, 1961 Illinois Revised Statutes, chapter 36, section 29, was also amended to read as follows:

"Section 29: The county treasurer shall make to the county clerk an annual report, under oath, of all interest received by the county treasurer or credited to the county treasurer by any bank or other depositary, in which is deposited any county moneys, and at the time of making such report the county treasurer shall pay into the county treasury for the benefit of the county the aggregate amount of all interest so received by or credited to him, as shown by said report."

It is upon the 1925 amendment to section 29 of chapter 36, Illinois Revised Statutes, that petitioners-

counterdefendants rely to support their claim to the interest earned on the protested tax funds held by the County Collector of St. Clair County. The only case we have been able to find which is not cited in any of the briefs interpreting this section of the statute is Board of Education of School Dist. No. 148, Cook County v. County of Cook, 42 Ill App2d 91, 191 NE2d 444. In that case it was assumed and there was no question raised that the funds in the hands of the County Collector as protested taxes were school funds. The only issue before the court was the distinction between interest earned on money deposited in a bank and interest earned on money invested with the United States Government on ninety-day notes, and the court held that there was no distinction and that all monies earned as interest on invested school funds, under the provisions of the statute, section 29, supra, should be credited and paid over to the school district entitled to the same and not to the General County Fund. The funds in that case were designated as school funds and held as such in a special "tax reserve account," whereas, in the present case the funds in the hands of the County Collector are not so designated but are held in a reserve fund for the specific purpose of refunding money to the taxpayers where their objections are allowed.

We conclude that interest earned on such funds should be paid unto the General County Fund.

The record discloses that all personal property taxes paid under protest to the County Collector of St. Clair County, Illinois, on which no petition has been filed within the statutory period have been distributed, and that question is, therefore, moot and need not be considered in this opinion.

Since section 194 of the Revenue Act of 1939, 1959 Illinois Revised Statutes, chapter 120, section 675, re-

quired that taxes be paid to the County Treasurer ex officio County Collector before a protest could be filed by the taxpayer, in our opinion, these monies cannot, until a final determination by a court, be considered the property of the taxpayer and the interest earned on said funds while in the hands of the County Treasurer cannot be considered the property of the taxpayer. The taxpayer may have a claim against the county for the return of all or part of the monies so paid, but until an adjudication is made of the validity of the tax objections, the monies held by the County Treasurer ex officio County Collector are public funds held in reserve and not the property of either the taxpayer or the taxing bodies.

■■ For the reasons herein stated, it is our opinion that the Revenue Act of 1939, as amended through 1959, and the Supreme Court decisions interpreting that statute make it clear that the County Collector should not distribute protested tax funds until a final order adjudicating the validity of the tax objection has been entered and in the interim, he hold such funds in escrow as public funds and not as the funds of the taxpayer or the funds of the taxing district. Although the statute of 1959 did not specifically authorize the County Treasurer ex officio County Collector to invest those funds he has that inherent right based upon his absolute accountability for such funds and if he elects to invest said fund, the interest earned from the investment should be paid into the General County Treasury.

While the provisions of the 1961 amendments to the Revenue Act of 1939 are not controlling on protested taxes for the year 1959 and prior years, in our opinion, they express a clear legislative clarification of the law as it existed in Illinois from prior legislative enactments and Supreme Court decisions and are merely a codification of the law as it existed.

124

Sub-paragraphs a, b, c, d and f of the Judgment Order of the Trial Court are affirmed and sub-paragraphs e and g of the Judgment Order of the Trial Court are reversed.

Affirmed in part and reversed in part.

DOVE, P. J. and REYNOLDS, J., concur.